DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

---

[No. 14658.    Department Two. — June 15, 1892.]

## CONSOLIDATED NATIONAL BANK, APPELLANT, v. PACIFIC COAST STEAMSHIP COMPANY, RESPONDENT.

AGENCY — AUTHORITY TO BORROW MONEY — INFERENCE FROM EMPLOYMENT. — If the transaction of business carried on by an agent for his principal absolutely requires the exercise by the agent of the power to borrow money in order to carry it on, such power is impliedly conferred as an incident to the employment; but it does not afford a sufficient ground for the inference of such a power, to say the act proposed was convenient or advantageous, or more effectual in the transaction of the business provided for, but it must be practically indispensable to the execution of the duties really delegated, in order to justify its inference from the original employment.

ID. — NECESSITY OF BORROWING MONEY — PRESUMPTION — USUAL COURSE OF BUSINESS — EXPRESS AUTHORITY. — Where the authority of an agent to borrow money is denied by the principal, and it is proved that there was no necessity for borrowing money to effect any purpose of the agency, it will not be presumed, without evidence, that it was proper or usual, in the ordinary course of the business in which he was employed, to borrow money without express authority.

ID. — OSTENSIBLE AUTHORITY — LOCAL AGENT OF STEAMSHIP COMPANY — OVER-DRAFT. — There is no ostensible authority to a local agent of a steamship company to borrow money or over-draw from a bank, where it appears that its general agents had no notice that the local agent had an account with the bank, or had ever overdrawn the account or borrowed money from the bank, and that they had furnished the local agent with a safe in which to keep the money collected by him, and where it further appears that the bank did not notify the general agents of the over-draft, but dealt with the local agent only, and accepted his individual promises to pay the over-drafts.

XCV. CAL.—1

ID. — PLEADING — TWO COUNTS UPON SAME CAUSE OF ACTION — DEMURRER
TO FIRST COUNT — ERROR WITHOUT PREJUDICE. — The sustaining of a
special demurrer for uncertainty to the first count of a complaint, con-
sisting of the common count for money had and received, the other
count, upon which the case was in fact tried, consisting of a claim for
over-drafts of defendant's accounts with the plaintiff bank, if errone-
ous, cannot be prejudicial error, where it appears from the evidence that
there could be no recovery upon the first count, and that both counts
were intended to represent the same cause of action.

ID. — EVIDENCE — DEFALCATIONS OF AGENT — OVER-DRAFTS TO PAY DEFAL-
CATIONS. — In an action by a bank against a steamship company to re-
cover a sum of money alleged to have been overdrawn from the bank by
the company, evidence upon the part of the defendant tending to prove
the amount of the defalcations of a local agent of the company, who had
overdrawn his accounts with the bank, that his over-drafts were made
to pay the amount he was behind in his accounts with the defendant,
and that at the time of the over-drafts he had money of the defendant's
on hand sufficient to pay all claims against the defendant, is admissible,
as tending to prove that the over-drafts were not loans to the defendant,
and that the agent had neither express nor implied authority from the
defendant to make them; but that they were made by the agent for the
purpose of paying his own debt to the defendant.

TRIAL — ERROR WITHOUT PREJUDICE — EXAMINATION OF WITNESS — AN-
SWERS TO QUESTIONS OBJECTED TO. — The sustaining of an objection to
questions asked of a witness cannot be prejudicial error, where the
witness is afterwards permitted to answer and does fully answer the
questions.

ID. — RE-OPENING CASE FOR FURTHER EVIDENCE — DISCRETION. — The action
of the trial court in refusing to reopen an action after the close of the trial,
for the purpose of allowing the introduction of additional evidence, is
not an abuse of discretion, where there is no showing of any excuse for
not having produced the evidence at the trial.

APPEAL from a judgment of the Superior Court of San
Diego County, and from an order denying a new trial.

The facts are stated in the opinion.

*Works, Gibson & Titus,* and *Works & Works,* for Ap-
pellant.

Simpson, being authorized to do and transact all of
the business of the defendant at the port and city of San
Diego, was a general agent, and, as such, authorized to
do everything necessary or proper or usual in the
conduct of such business. (Civ. Code, secs. 2297, 2319;
*Hoskins* v. *Swain,* 61 Cal. 338; *Anderson* v. *Ames,* 151
Mass. 11; *Shepherd* v. *Milwaukee Gas-Light Co.,* 11 Wis.

243; *German Fire Ins. Co.* v. *Grunert*, 112 Ill. 68; *Banner Tobacco Co.* v. *Jenison*, 48 Mich. 459; Mecham on Agency, secs. 285, 311.) Having authority, generally, and without limitation, to collect, pay out, and handle the money of the defendant at this port, he was authorized to open an account with the plaintiff, deposit money thereunder, and check against the same. (*Com. Bank of Lake Erie* v. *Norton*, 1 Hill, 501; *Hearne* v. *Keene*, 5 Bosw. 579, 584.) Having power to draw checks for and on account of the defendant, the authority to check beyond the amount on deposit, and thereby create an over-draft binding on the defendant, necessarily followed. (*Tradesmen's Bank* v. *Astor*, 11 Wend. 87; *Merchants' Bank* v. *State Bank*, 10 Wall. 604.) If the authority to deposit and draw checks, and, as consequent thereto, to overdraw the defendant's account, did not follow, as a matter of law, from the nature and character of his agency, his long and continued exercise of such power was, as to the plaintiff, with whom he dealt, equivalent to an express grant of such authority by the defendant. (*Merchants' Bank* v. *State Bank*, 10 Wall. 604.) If he was not expressly, or by the nature of his agency, authorized to deposit in bank, and draw against and overdraw the account, he was, as between the plaintiff and defendant, vested with that authority, for the reason that the defendant made him its ostensible agent for these purposes, by "intentionally, or by want of ordinary care," causing the plaintiff to believe he was its agent with such authority. (Civ. Code, secs. 2300, 2317; *Quinn* v. *Dresbach*, 75 Cal. 159; Mecham on Agency, sec. 282; *Heald* v. *Hendy*, 89 Cal. 632.) So the manner in which he was treated and allowed to deal with the plaintiff, as having apparent authority to act for it in the premises, was sufficient to bind the defendant. (1 Am. & Eng. Ency. of Law, 340; *Law* v. *Stokes*, 23 N. J. L. 249; 90 Am. Dec. 655; Mecham on Agency, sec. 282.) These rules of law are applicable to corporations. Where a corporation has allowed its officer or agent to conduct its business in a certain way, and to perform certain acts

for and on behalf of such corporation, the ordinary usage and practice of the corporation in this respect must, in the absence of counter-proof, be supposed to result from the regulations prescribed by the board of directors, to whom its charter and by-laws submit the general management of its business. (*Minor* v. *Mechanics' Bank of Alexandria*, 1 Pet. 46, 69; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 644.) It was the duty of the defendant to use ordinary care to ascertain and know what acts were being done and authority exercised by its agent. It was bound, as between itself and the bank, to inspect and examine the books of its agent, to ascertain the truth. If it did not, it, and not the bank, must suffer the loss. (*Leather Mfrs'. Bank* v. *Morgan*, 117 U. S. 97, 106; *Dana* v. *National Bank*, 132 Mass. 156.) The plaintiff bank was not bound to inquire for what purpose checks were drawn upon it. Nor is it material, so far as the bank is concerned, whether Simpson was behind with his accounts, and drawing the checks in favor of the general agent in order to make his accounts balance as between himself and his principal, or not. It was enough that he had authority to draw the checks. (*Bremer County Bank* v. *Mores*, 73 Iowa, 289; *Eyrich* v. *Capital State Bank*, 67 Miss. 60; *Hale* v. *Richards*, 80 Iowa, 164.) The apparent authority of Simpson, and the manner in which he was publicly treated by the defendant, could not be controlled by private instructions or limitations of authority not brought to the attention of the plaintiff. (*Lister* v. *Allen*, 31 Md. 543; 100 Am. Dec. 78; *Banner Tobacco Co.* v. *Jenison*, 48 Mich. 459; Mecham on Agency, sec. 283; *Owen* v. *Crawley*, 36 N. Y. 600, 604.) If an agent has authority to draw checks, he may overdraw even beyond an amount expressly limited by the principal with the bank. (1 Morse on Banks and Banking, sec. 358; *Bremer Co. Bank* v. *Mores*, 73 Iowa, 289.) The money overdrawn by Simpson having been paid directly to the defendant through its general agents, by the drafts of the defendant, it cannot be heard to deny his authority to draw and pay it over. It is not a question

as to which of two innocent parties shall suffer, as it would have been had the money thus overdrawn gone to some one else. As the defendant received the money, it is in no worse condition, if required to repay it, than if it never had been drawn. (*Mahoney Mining Co.* v. *Anglo-California Bank*, 104 U. S. 192; *Milligan* v. *Davis*, 49 Iowa, 126; *Marine Bank* v. *Butler Colliery Co.*, 5 N. Y. Sup. Ct. 291; *Fouch* v. *Wilson*, 59 Ind. 93; *Batch* v. *Taylor*, 10 N. H. 538; *Merchants' Bank* v. *State Bank*, 10 Wall. 644; *Rowan* v. *Buttman*, 1 Daly, 412; *Hearne* v. *Keene*, 5 Bosw. 579, 585.) The court below erred in sustaining the defendant's demurrer to the first count of the complaint. This count is in the usual form of common counts for money had and received, and has been held to be good in this state. (*Freeborn* v. *Glazer*, 10 Cal. 337; *Hunt* v. *City of San Francisco*, 11 Cal. 250, 258; *Buckingham* v. *Waters*, 14 Cal. 147; *Higgins* v. *Wortell*, 18 Cal. 331; *Wilkins* v. *Stidger*, 22 Cal. 235; 83 Am. Dec. 64; *Pavisich* v. *Bean*, 48 Cal. 364; *Magee* v. *Kast*, 49 Cal. 141; *Quimby* v. *Lyon*, 63 Cal. 394; *Clay* v. *Carroll*, 67 Cal. 19; *Castagnino* v. *Balletta*, 82 Cal. 250, 257.) It will no doubt be contended that it is apparent that the cause of action alleged in this and the other count of the complaint were identical, and that therefore the ruling, although erroneous, was harmless. But this position cannot be maintained. In the first place, this court cannot assume that the causes of action are the same, and in fact they are not. The second count depends upon the proof of the agency of Simpson, and his authority to make the over-draft. The first count called for no such proof. If the steamship company received the moneys of the bank and used it, it became liable for money had and received, whether Simpson had any authority to act for it or not. (*Merchants' Bank* v. *State Bank*, 10 Wall. 604, 644.)

*Luce & McDonald*, for Respondent.

One who deals with a special or local agent is bound to ascertain the scope and measure of his authority.

(Wade on Notice, 2d ed., sec. 660; Mecham on Agency, secs. 288, 289; Morawetz on Private Corporations, sec. 606; *Hurley* v. *Watson,* 68 Mich. 531; *Hayes* v. *Campbell,* 63 Cal. 143; *Chaffee* v. *Stubbs,* 37 La.. Ann. 656.) Conceding that Simpson was "a general agent" in and about the business of the defendant at the port of San Diego, still he had no implied power to borrow money for the defendant, or to issue negotiable paper for its benefit. (Mecham on Agency, sec. 398; *Iron Mine* v. *National Bank,* 39 Mich. 644; *Mining Co.* v. *National Bank,* 1 Col. 531; 2 Col. 565; *Breed* v. *National Bank,* 4 Col. 481; *Carpenter* v. *Biggs,* 46 Cal. 92.) If the agent of a corporation has no authority to perform an act, except under extraordinary circumstances, the company is not bound by such act, unless the extraordinary circumstances actually existed at the time of the act in question; and one seeking to hold the company liable for such act must show the existence of the special circumstances upon which the authority of the agent to bind the company rested. (Morawetz on Private Corporations, sec. 606, and cases cited; *Harris* v. *Flume Co.,* 87 Cal. 526.) And an agent, unless specially authorized, never has the power to borrow money in order to carry on the business of the principal, unless such act is practically indispensable to the execution of the duties actually delegated to such agent; and it is not sufficient that the act proposed was convenient and advantageous both to principal and agent, or more effectual in the transaction of the business provided for. (Mecham on Agency, sec. 399; *Bickford* v. *Menier,* 107 N. Y. 490.) In the case at bar the account in question was not kept at the plaintiff bank in the name of the defendant, and the checks drawn against it, including the over-drafts, were not drawn in its name, and did not purport to be its act or by its authority. The addition of the word "agent" after Mr. Simpson's name, in the account, and to the checks, was a mere *descriptio personæ,* and created no liability against the defendant. (*Tannant* v. *National Bank,* 1 Col. 278; 9 Am. Rep. 156; *Hobson* v. *Hassett,* 76 Cal. 203; 9 Am.

St. Rep. 193.)  All the authorities which hold that a special agent can, under any circumstances, bind his principal for moneys borrowed by him for it put it upon the ground that the act must be practically indispensable to the execution of the duties actually delegated; and that one seeking to hold the principal for such act must prove the existence of the special circumstances upon which the authority of the agent to bind his principal rested. (Morawetz on Private Corporations, sec. 606; Mecham on Agency, sec. 399; Wharton on Agency, sec. 137; *Bickford* v. *Menier*, 107 N. Y. 490; *Hurley* v. *Watson*, 68 Mich. 531; Civ. Code, sec. 2319, 2334.)  Where the party relies upon the ostensible authority of an agent to sustain an unauthorized act, he must give evidence of similar transactions in which such acts of the agent were authorized or ratified.  (*Robinson* v. *Nevada Bank*, 81 Cal. 106.)  The failure of the plaintiff to make any inquiries of the defendant as to the extent of Simpson's authority, and its allowance of the continual overdrawing of the account, and its consent that such over-drafts should be continued by his son during Simpson's absence in England, constituted negligence of the grossest character on the part of the plaintiff, and bars all claim made by it of negligence against the defendant.  (Wharton on Agency, sec. 137; Mecham on Agency, sec. 290.)  As the record shows that the defendant received the money overdrawn, as payments by Simpson on account of its funds, and that he was still indebted to the defendant after its receipt of the last draft issued by the plaintiff for the last over-draft made by Simpson, and also shows that when the defendant received the proceeds of such over-drafts it was entirely ignorant that Simpson had so procured them; or that he had at any time deposited any of its funds in the plaintiff bank, since it had furnished him the safe for the safe-keeping thereof, the receipt and retention of such moneys by the defendant created no liability to the plaintiff for the same.  (*Navigation Co.* v. *Dandridge*, 8 Gill & J. 248; 29 Am. Dec. 543; *Bohart* v. *Oberne*, 36 Kan. 284; *Thacher* v. *Pray*,

113 Mass. 291; 18 Am.. Rep. 480; *Robinson* v. *Nevada Bank*, 81 Cal. 106–110.) There was no error in allowing the defendant to prove the authority, powers, and duties of Simpson as its agent at San Diego, for the plaintiff was bound thereby, unless it could not, by the use of reasonable diligence, have ascertained them. (Wharton on Agency, sec. 137; Mecham on Agency, sec. 289, 290; Civ. Code, secs. 2319, 2334.)

Vanclief, C. — The complaint in this action, showing that plaintiff and defendant are corporations, is in two counts; the first alleging " that defendant is indebted to the plaintiff for moneys had and received by it from the plaintiff in the sum of $13,574.47, which sum is now due and unpaid." In the second count it is alleged, substantially, that for many successive years the defendant did business with the plaintiff by depositing in plaintiff's bank, at the city of San Diego, and drawing therefrom on its checks large sums of money; during which time the defendant frequently overdrew its account in large sums, which were repaid at various times, except as hereinafter alleged. "That between April 18, 1889, and November 1st of same year, the defendant, by its checks, regularly drawn on the plaintiff, overdrew its account in plaintiff's said bank, in the sum of $10,754.91," which, with interest at twelve per cent per annum, amounts to $13,574.47. For this amount plaintiff prays judgment. A special demurrer to the first count, on the ground of uncertainty, was sustained by the court.

The answer of the defendant specifically denies each allegation of the second count, except that each party is a corporation.

The case was tried without a jury, and the court found for defendant on all the issues, and rendered its judgment accordingly.

Plaintiff's motion for a new trial, made on a bill of exceptions, having been denied, the plaintiff appeals

both from the judgment and from the order denying a new trial.

1. Appellant contends that the evidence is insufficient to justify the findings of the court in any material particular.

It appears that during the transactions in controversy the defendant was engaged in the business of marine carrier of freight and persons along the Pacific coast from Mexico to Alaska. Goodall, Perkins & Co., at San Francisco, were its general agents; but it had a local agent at each port on the coast where it did business. These local agents were under the control of the general agency, and were required to report directly to Goodall, Perkins & Co., at San Francisco. During the transaction in question, J. H. Simpson was the local agent for the defendant at the port of San Diego, in this state, and the plaintiff was there engaged in the business of banking. Continually since the organization of the plaintiff's bank, in 1883, until October, 1889, Simpson had an account of his deposits and drafts of money with plaintiff's bank, kept in the name of "J. H. Simpson, agent." To this account he deposited in the bank, from time to time during each month, considerable sums of money collected by him for the defendant. During the same period he was treasurer of a Masonic lodge, and also of an Unitarian church, and from time to time deposited to the same account considerable sums of money belonging to the lodge and to the church, amounting to over twenty thousand dollars, besides twenty-three thousand dollars of his own money. All his checks upon this account were signed "J. H. Simpson, Agent," and the greater portion of them made payable to himself, and actually paid to him. Of those paid to himself the greater portion were paid by drafts of the plaintiff on San Francisco, payable to Goodall, Perkins & Co. · There was nothing on the checks, save the name of the payee, to indicate the purpose for which they were drawn. Neither the checks nor the account indicated for whom Simpson was agent.

On or about October 1, 1889, Simpson was discovered to be some nine thousand dollars short in his accounts with defendant, which he professed to be unable to pay, and for that reason was removed from his position as agent of defendant. At the same time his account with the plaintiff was overdrawn $11,404.32, which, with interest at twelve per cent per annum, constitutes the amount sued for in this action.

If Simpson had actual or ostensible authority to borrow money for the defendant, the plaintiff is entitled to recover, otherwise not. This is the ultimate and pivotal question of fact presented for decision. Upon this question the trial court found for the defendant, and I think the finding is justified by the evidence.

The evidence is positive that no express authority to borrow money on defendant's account, nor even to deposit defendant's money in any bank, was ever given to Simpson; and there is no pretense to the contrary. But counsel for appellant contend, in substance, that such authority was implied from the necessity of borrowing money in order to carry on the business which Simpson was employed and authorized to do. The evidence, however, strongly tends to prove that no such necessity ever existed. It appears that Simpson occupied the position of agent for defendant at the port of San Diego since 1875, and that from some time in 1876 until the organization of the plaintiff bank in 1883, he had an account with the Commercial Bank of San Diego, similar to that which he afterwards had with the plaintiff; and that upon the organization of the plaintiff bank, as the successor of the Commercial Bank, his account with the latter was transferred to the former. His account in the Commercial Bank was often overdrawn to the extent of two hundred to three thousand dollars. Between the second day of January and the thirty-first day of December, 1888, he overdrew his account in the plaintiff bank thirty-seven times, in sums ranging from one thousand to four thousand six hundred dollars; but these overdrafts were frequently canceled by deposits. On De-

cember 31, 1888, the account stood credited with a balance of $1,560.40 in Simpson's favor; and there was a still larger balance in his favor on the thirteenth day of February, 1889, when he drew a check in favor of himself for $15,026.92; and the next day (February 14th) drew another for $5,000. These two checks were paid to him in drafts on San Francisco, payable to Goodall, Perkins & Co., which were paid accordingly. On February 14, 1889, the over-draft was $8,930; March 13th, $13,782; April 19th, $12,567; May 17th, $13,741; June 19th, $14,099; July 16th, $14,111; August 21st, $13,692; September 12th, $15,717; October 3d, $13,398; and October 11th, when the amount was closed, $11,404.32.

It was proved that all over-drafts from December 31, 1888, until the account was closed, were paid to Simpson in drafts on San Francisco, payable and actually paid to Goodall, Perkins & Co., as the general agents of the defendant. It seems incredible that the agents of plaintiff could have believed that any of these over-drafts were necessary to enable Simpson to carry on any business which he was authorized to do as local agent of the defendant at the port of San Diego, or that Simpson intended to use or could have used them for any such purpose. Nor, indeed, is there any evidence that they ever pretended so to believe. Yet the over-draft sued for must be included in those drawn since February 12, 1889.

Mr. Simpson, who appeared as a witness on the part of the plaintiff, testified that there never was any necessity for his borrowing money to carry on any business which he was authorized to do for the defendant; that enough money was always collected by him to pay the running expenses of all the business he was authorized to do; that all his over-drafts, which were paid to him by plaintiff in drafts on San Francisco, payable to Goodall, Perkins & Co., were made for the sole, purpose of reducing the balance against him in his accounts with the defendant, kept by Goodall, Perkins & Co., and that

he so informed Mr. Bryant Howard, the president of the plaintiff bank, before the 13th of February, 1889.

Mr. George C. Perkins, of the firm of Goodall, Perkins & Co., testified on behalf of the defendant that there never was any necessity for Simpson to borrow money for defendant for any purpose whatever.

As to the implied power of an agent to borrow money on account of his principal, the court of appeals, in *Bickford* v. *Menier*, 107 N. Y. 490, said: "If the transac-tion of the business absolutely required the exercise of the power to borrow money in order to carry it on, then that power was impliedly conferred as an incident to the employment; but it does not afford a sufficient ground for the inference of such a power, to say the act proposed was convenient or advantageous, or more effectual in the transaction of the business provided for, but it must be practically indispensable to the execution of the duties really delegated, in order to justify its inference from the original employment." (See also *Hurley* v. *Watson*, 68 Mich. 531; Mecham on Agency, sec. 399; Wharton on Agency, sec. 137; Morawetz on Private Corporations, sec. 606.) Section 2319 of the Civil Code provides that an agent has authority "to do everything necessary or proper *and* usual, in the ordinary course of business, for effecting the purpose of his agency." It having been proved, as above shown, that there never was any necessity for borrowing money to effect any purpose of Simpson's agency, it will not be presumed, without evidence, that it was proper *or* usual, in the ordinary course of the business in which he was employed, to borrow money without express authority, when there was no necessity for so doing.

2. There is no evidence of ostensible authority. Simpson testified that he never notified the defendant or its general agents that he had overdrawn his account with plaintiff's bank, and that there was nothing in his correspondence with the defendant or its agents, or in the books which he kept for defendant, from which any such over-draft might have been inferred; and further-

more, that he had never informed defendant that he had an account with plaintiff or any other bank, and did not believe that defendant had notice of any such account before October, 1889. The only circumstance which it is claimed should have operated as notice of such account to Goodall, Perkins & Co. is, that seven or eight years before the trial they sent an expert accountant to examine the books kept by Simpson; and on that occasion, in order to balance his account, Simpson exhibited his pass-book as a voucher for a small balance in his favor, in either the plaintiff's bank or the Commercial Bank. The pass-book then exhibited showed the account to be in the name of "J. H. Simpson, Agent."

Mr. Perkins testified that Goodall, Perkins & Co. never had notice that Simpson had any account with any bank; that in 1884 they furnished him a good safe, supposed to be burglar-proof, in which to keep the money of the defendant; and they always supposed that Simpson purchased the drafts remitted to them with defendant's money, until after they discovered that he was short in his accounts with them, and after his last over-draft upon plaintiff. There was no evidence that defendant ever paid or recognized any debt for borrowed money contracted by Simpson, or by any other local agent. Moreover, the circumstantial evidence had a tendency to prove that the agents of the plaintiff never regarded the account of "J. H. Simpson, Agent," as the account of the defendant, and never understood that defendant was responsible for Simpson's over-drafts. 1. Although often anxious to have the larger over-drafts reduced, and requesting Simpson to reduce them, they never notified the defendant of the existence of the account, or of any over-draft, until more than fifteen months after Simpson was removed. 2. On June 20, 1888, the plaintiff took Simpson's individual note, signed "J. H. Simpson," for seven thousand dollars, to cover his over-drafts on the account of "J. H. Simpson, Agent." This note was afterwards, in July, 1888, paid by three memorandum checks drawn by the cashier on the account of "J. H.

Simpson, Agent." 3. About the 1st of April, 1889, Mr. Howard, president of the bank, complained to Mr. Simpson of the amount of the over-draft, and requested that it be reduced. Simpson then told Mr. Howard that he (Simpson) was about to go to England, where he expected to get about twenty-one thousand dollars, and on his return, in about three months, he would pay the over-draft. Howard asked him if he felt sure of that, and Simpson answered that he did. It was then agreed between them that an over-draft not exceeding twelve thousand dollars would be allowed during Simpson's absence, and that Simpson's son, who was to act for his father during his absence, should be allowed to overdraw the account to that limit. Thereupon Simpson gave the bank written authority to allow his son to draw checks and transact all banking business for him until further orders, and Simpson left for England on April 8, 1889. I think it does not appear when he returned, but it does appear that he failed to raise any money. On May 17th, 1889, the over-draft was $13,741; June 19th, $14,099; and Septemder 12th, $15,717; yet during that time no notice of the over-draft was given to the general agents of the defendant. In October, 1889, Simpson was removed on account of the deficit in his accounts with the defendant. Of this the plaintiff had notice, and soon thereafter Mr. Howard, the president of the bank, went to San Francisco and called on Goodall, Perkins & Co., and earnestly requested them to retain Mr. Simpson in their employ at San Diego, in the same position he had before occupied, and offered to go on his bond for the faithful performance of his duties; yet did not then, nor until about fifteen months thereafter, notify Goodall, Perkins & Co. of Simpson's over-draft in plaintiff's bank, nor of any demand against the defendant.

Mr. Howard's attempted explanation of these circumstances seems unreasonable and wholly unsatisfactory.

Section 2317 of the Civil Code defines ostensible authority to be "such as a principal intentionally, or by

want of ordinary care, causes or allows a third person to believe the agent to possess."

If there was any evidence tending to prove this, I think it safe to say the preponderance of the evidence was against it, and fully justifies the finding of no ostensible authority. (*Robinson* v. *Nevada Bank*, 81 Cal. 107.)

3. It is contended that the sustaining of the special demurrer to the first count of the complaint was error prejudicial to defendant. Conceding that it was error, I think it appears that plaintiff was not injured thereby; for although it may be true, as stated by counsel, that a state of facts may possibly have existed entitling plaintiff to recover under that count without proving the authority of the agent, Simpson, to borrow money for defendant, yet it is quite apparent from the evidence that no such state of facts did exist, and that the first and second counts were intended to represent the same cause of action.

4. The court sustained an objection to each of the following questions propounded by plaintiff's counsel to plaintiff's witness, Simpson: "1. When did you first commence to deposit moneys for defendant in the Consolidated National Bank? 2. State on whose account and for whom these deposits were made by you as agent." But the witness was afterwards permitted to anwer and did fully answer these questions.

5. There was no error in allowing defendant to prove the amount of Simpson's defalcations, that his overdrafts were made to pay the amount he was behind in his accounts with defendant, and that at the time of the over-drafts, he had money of the defendant's on hand sufficient to pay all claims against the defendant. Obviously, this testimony tended to prove that the over-drafts were not loans to defendant, and that Simpson had neither express nor implied authority from defendant to make them; but that they were made by Simpson for the purpose of paying his own debt to defendant. For these purposes the evidence was competent, even

conceding that it did not touch the question as to the ostensible authority of Simpson.

6. The trial, so far as the evidence was concerned, was closed on July 3d, when, by consent of both parties, the summing up by counsel was postponed until July 7th. On July 7th, the court being otherwise engaged, it was again postponed until July 8th. On July 8th it was again postponed until July 9th, by request of plaintiff's counsel. On July 9th plaintiff's counsel, without previous notice, moved the court to open up the case for the purpose of allowing the plaintiff to make proof that Simpson, in the transaction of defendant's business, had signed receipts, advertised in the papers, and signed other papers and documents, " J. H. Simpson, Agent "; and also that since the alleged over-drafts the defendant has taken conveyances of property from Simpson to secure defendant against loss. This motion was opposed, on the grounds that the proposed evidence was irrelevant and immaterial; and that there was no showing or suggestion of surprise, oversight, or inability to have procured the proposed evidence upon the trial. The court denied the motion. Counsel for appellant contend that this action of the court was an abuse of its discretionary power, but in this I think they are mistaken.

Neither the forms nor substance of the alleged receipts, advertisements, or other documents signed by Simpson as " agent," were shown. It may, therefore, be presumed that, unlike his account with and checks upon the plaintiff's bank, they contained the name of the principal, — the Pacific Coast Steamship Company, — and expressly showed the receipted demands to be claims against the principal, the advertisements to be the advertisements of the business of the principal, and that the other documents expressly purported to bind the principal. Such evidence would have added nothing favorable to plaintiff's case. Neither would the fact that defendant took security from Simpson, unless the security was given to indemnify defendant for loss on account of the demand of the plaintiff in suit, which is not pretended.

Besides, there was no showing of any excuse for not having produced the evidence at the trial.

I think the judgment and order should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.