[L. A. No. 22683. In Bank. May 29, 1953.]

JAMES H. EATWELL et al., Appellants, v. HOWARD J. BECK et al., Respondents.

Emmett E. Patten and Glen A. Duke for Appellants.

Victor Bewley and W. Torrance Stockman for Respondents.

SCHAUER, J.—Plaintiffs appeal from a judgment of nonsuit in their action to recover damages resulting from alleged fraudulent misrepresentations as to the income of a motel which they purchased. It is our conclusion that plaintiffs' request to reopen their case, amend their complaint, and present further evidence to meet the objections raised by defendants should have been granted, and that the judgment (except as to defendant David Craig Cummings) should be reversed.

Plaintiffs are Mr. and Mrs. (John C. and Florence) Botto, who are advanced in age, and their daughter and her husband, Mr. and Mrs. (James H. and Eunice A.) Eatwell. Defendants are Howard J. Beck and J. H. Rice, real estate brokers and partners who negotiated the transaction complained of, a Mr. and Mrs. (Sam M. and Loretta A.) Thomas,[1] sued as the owners who employed Beck and Rice to make the sale, and Mr. and Mrs. (David Craig and Anna Luella) Cummings, who held an encumbrance on the property and formerly owned it.

Plaintiffs allege in substance: On October 19, 1948, the real estate brokers, acting as the agents of defendants Thomas, entered into negotiations with plaintiffs for the sale to plaintiffs of the Thomases' 10-unit motel property (including both realty and personalty) and business located near Fontana, California. Plaintiffs had informed the brokers that Mr. Botto was a carpenter by trade but was unable by reason of his age to obtain or perform regular work, that plaintiff Mr. Eatwell was a laborer who earned approximately $240 a month, that both Mrs. Botto and Mrs. Eatwell were "untrained and inexperienced in any occupation or business other than that of housewife"; that the Bottos were prepared to invest "their entire savings and accumulations" of $7,000 "in the purchase of a motel or motor court to be operated jointly by the plaintiffs and used and occupied by them as their home, if . . . they should be able to purchase such a property and business which had theretofore produced and was then producing a sufficient income" to meet monthly payments on any encumbrances on the property, to pay all expenses except wages and salaries, and to "provide a moderate surplus as . . . compensation for their services in the operation" of the motel. The brokers falsely and fraudulently informed plaintiffs that monthly gross income of the Thomas motel property was and had been for some time past

---

[1] A second Mr. and Mrs. Thomas were also named as defendants but the action was dismissed as to them.

between $700 and $800 a month and defendant Mrs. Cummings, who was managing the motel, falsely and fraudulently told plaintiffs that the gross income for the first 19 days of October, 1948, was $450. Actually (plaintiffs further allege) the true gross income was not then and had never been over $275 a month. Thereafter on the same day (October 19) plaintiffs, in reliance upon the representations as to gross income, agreed to purchase the property for the total price of $43,000, paying $7,000 in cash and the balance by assuming two encumbrances on which payments totaling $275 monthly were required; defendants Cummings were the holders of one of such encumbrances, on which the unpaid balance was some $22,225.

Plaintiffs alleged damage in the sum of $7,000, paid on the purchase price of the property, plus other sums alleged to have been paid by them as insurance, escrow charges, and principal and interest on the two encumbrances. They prayed for recovery of all of such sums, plus exemplary damages.

The case was tried before the court without a jury. At the close of plaintiffs' evidence, during which it developed that subsequent to filing this action plaintiffs had lost the property by foreclosure, all defendants moved for a nonsuit on the ground that plaintiffs had failed to either plead or prove a cause of action under the so-called "out-of-pocket loss rule" included in the provisions of section 3343[2] of the Civil Code and held to constitute the sole and exclusive measure of damages suffered by one defrauded in the purchase, sale, or exchange of property. (See *Bagdasarian* v. *Gragnon* (1948), 31 Cal.2d 744, 760-763 [192 P.2d 935].) For "nonsuit purposes" defendants Thomas and the real estate brokers stipulated and "conceded" that the evidence would support a finding of fraud.[3]

Following argument on the nonsuit motion and prior to the court's ruling thereon, plaintiffs moved for permission

[2]Civil Code, section 3343: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

[3]Although the matter seemingly was not raised in the trial court, defendants Cummings urge on appeal that as to themselves a finding of fraud would be without evidentiary support. We discuss this contention hereinafter in this opinion.

"to reopen their case, for leave to amend the complaint therein, and for leave to offer additional evidence . . . as to the actual value of the property in question here . . . [T]he amendments are for the purpose of clarifying the point of the actual value vs. the representative value." The amendments proposed by plaintiffs would add to the complaint allegations that the real estate brokers falsely and fraudulently represented to plaintiffs that the property was worth $43,000 (the amount for which plaintiffs purchased the property), that such representation was untrue in that the property was worth only $30,000, and that plaintiffs were thereby damaged in the sum of $13,000; and would add a prayer for the $13,000. Plaintiffs also filed, with their notice of motion to reopen, an affidavit of a real estate appraiser to the effect that he had examined the property in question and had determined that its actual value at the time plaintiffs purchased it was approximately $32,500; and also an affidavit of one of plaintiffs' counsel to the effect that their failure to offer such evidence earlier in the proceedings was "due to the inadvertence of counsel." Following further argument the court denied plaintiffs' motion, granted defendants' motion for nonsuit, and rendered judgment accordingly. This appeal by plaintiffs follows.

As grounds for reversal plaintiffs contend that the allegations of their complaint and the evidence they produced would under concepts of fraud actions prior to the enactment of section 3343, or under any construction of that section other than as limiting recovery to that expressly authorized by it, have entitled them to some recovery or relief; that the fraudulent representations upon which they rely, and which were pleaded and prima facie established, were such that if the actual value of the property was less than the price they paid therefor, then under the provisions of section 3343 they are entitled to recover; that the evidence already before the court when the motions were made tended to prove that the value of the property they purchased was less than the price they paid; that inasmuch as the evidence of the fraudulent misrepresentations, together with some evidence tending to show damages under the out-of-pocket rule authorized by section 3343, was before the court and since plaintiffs before the ruling of the trial court on the motion for nonsuit applied for permission to amend their complaint to remedy the claimed deficiency in the pleading and also requested leave to introduce further evidence specifically substantiating the newly

proffered allegations, the court abused its discretion in refusing to permit plaintiffs to reopen their case, amend their complaint, and cure the claimed deficiency in both pleading and proof.

 As is pointed out in *Sferlazzo* v. *Oliphant* (1914), 24 Cal.App. 81, 86 [140 P. 289], in which a judgment of nonsuit and an order denying a new trial were reversed, "One of the chief objects subserved by a motion for nonsuit is to point out to the court and to opposing counsel the specific oversights and defects in plaintiff's proof of his case; and this in order that, as to the latter, he may supply if possible the specified deficiencies in his proof. [Citations.] When the plaintiff in this case, his attention being called to the matter, offered to do this, it was the duty of the court to permit him to supply the missing evidence; and it was error to refuse this privilege to the plaintiff and, after such refusal, to grant a motion for nonsuit. [Citation.]" (See, also, *Manford* v. *Coats* (1935), 6 Cal.App.2d 743, 747 [45 P.2d 395]; 9 Cal.Jur. 563-564, § 39; 24 Cal.Jur. 770-771, § 51.)

And in *Low* v. *Warden* (1886), 70 Cal. 19 [11 P. 350], a judgment of nonsuit was reversed where the court had refused to permit plaintiff to reopen the case and introduce testimony which "The court, after hearing argument [on the motion for nonsuit], intimated" was necessary. On appeal, this court stated (p. 21 of 70 Cal.): "We are of opinion that justice to the plaintiff demanded of the court that he should have been allowed to introduce testimony to prove the indorsement. The views of plaintiff's counsel in regard to the questions presented were novel and peculiar, and the course pursued by him singular, but we do not think that this justified the court in refusing to allow the plaintiff to prove that the note had been indorsed to him. . . . If the nonsuit were allowed to stand, the plaintiff would be compelled to bring a new action, to which the statute of limitations would be a bar. The plaintiff would thus suffer the loss of money justly due to him. Under the circumstances, this should not be allowed. We think the court erred in refusing to permit the plaintiff to introduce testimony as to the indorsement, for which the judgment must be reversed." (See, also, Code Civ. Proc., § 581c.)

 We are convinced that in the present case plaintiffs should likewise have been permitted to reopen their case and present further evidence (under the provisions of section 3343 of the Civil Code as construed and applied in *Bagdasarian*

v. *Gragnon* (1948), *supra,* 31 Cal.2d 744, 760-763), of the actual value of the property as compared with the value with which they parted. As contended by them, they had already introduced evidence tending to show certain elements which go toward the ascertainment of "actual" or "market" value of the motel. (See p. 754 of *Bagdasarian* v. *Gragnon, supra.*) For example, there was evidence that during the four months just prior to plaintiffs' purchase of the property the income therefrom "would average between $300.00 and $450.00, actually $438.00 per month . . ., never . . . any more than $438.00." Also, plaintiff Mrs. Eatwell testified that "As far as income was concerned I don't think it was worth a dime."

It has been held that although "Anticipated revenue from the property is not 'additional damage' within the meaning of section 3343 . . . It is an element to be considered in determining the actual value of the property . . ." (*Oliver* v. *Benton* (1949), 92 Cal.App.2d 853, 856 [208 P.2d 375].) There was also evidence that defendants Thomas, from whom plaintiffs purchased the motel for $43,000 on October 19, 1948, had themselves purchased it only the previous day (October 18, 1948), for the sum of $40,000. Evidence of "sales of the *identical* property in question, whether realty or personalty" is also a proper indicium of value. (*Bagdasarian* v. *Gragnon* (1948), *supra,* 31 Cal.2d 744, 758.)

Under such circumstances and in view of the fact that upon the argument on the motion for nonsuit the trial court had indicated it felt the evidence as to value was insufficient, it was incumbent upon the court to accept plaintiffs' offer and permit them to produce further and more specific evidence as to the actual, or market, value of the property after taking into consideration the various elements properly entering into such value. (See p. 754 of the Bagdasarian case; see, also, 8 Cal.Jur. 906; 10 Cal.Jur. 843 et seq, 1021 et seq.)

As already indicated, plaintiffs' complaint contained averments appropriate to an award of, and it demanded, exemplary damages. Section 3343 of the Civil Code, after authorizing the out-of-pocket measure of recovery, concludes: "Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled." We hold, therefore, that such section was not intended to, and that it does not, preclude the recovery of exemplary

damages. (See *Bagdasarian* v. *Gragnon* (1948), *supra,* 31 Cal.2d 744, 763.)

Cases relied upon by defendants[4] in which refusal to permit reopening for the introduction of further evidence was held proper do not involve motions for nonsuit, and are also otherwise distinguishable upon their facts from the situation here presented. No useful purpose would be served by discussing them in detail. In *Mayer* v. *Beondo* (1948), 83 Cal.App.2d 665, 668-671 [189 P.2d 327, 190 P.2d 23], likewise not involving a nonsuit, in which it was held that the trial court erred in permitting plaintiff to reopen his case in order to present further proof in support of his request for specific performance of a contract to convey real estate, it appears that the defects in plaintiff's case were called to his attention early in the trial but he failed to take timely steps to remedy them. And in *Engstrom* v. *Auburn Auto. Sales Corp.* (1938), 11 Cal.2d 64, 67, 72 [77 P.2d 1059], it appears that during the first two days of a trial lasting several days plaintiff-appellant knew that the defendant Silkman was not expected to attend the trial but nevertheless made no effort to secure his presence or his deposition prior to the close of the trial; it does not appear that any offer of proof was made; it does appear that evidence on the point in question was clear and uncontradicted and that appellant made no effort to controvert it; and that on the appeal the "appellant merely states the point without argument to support it." Under those circumstances the court's refusal to permit plaintiff to reopen the case in order to procure Silkman's testimony after the judge had indicated his intention to grant defendants' motion for a directed verdict, was upheld. Such decision furnishes no precedent for denying the motion of plaintiffs in the present case.

■ It is likewise apparent that plaintiffs should be permitted to amend their complaint so as to plead the specific remedy and request damages under the out-of-pocket loss rule of section 3343 of the Civil Code, as construed by this court in *Feckenscher* v. *Gamble* (1938), 12 Cal.2d 482, 500 [85 P.2d 885], and *Bagdasarian* v. *Gragnon* (1948), *supra,* 31

---

[4]Such cases are: *Consolidated Nat. Bank* v. *Pacific Coast S. S. Co.* (1892), 95 Cal. 1 [30 P. 96, 29 Am.St.Rep. 85]; *San Francisco Breweries* v. *Schurtz* (1894), 104 Cal. 420 [38 P. 92]; *Loftus* v. *Fischer* (1896), 113 Cal. 286 [45 P. 328]; *Houghton* v. *Lawton* (1923), 63 Cal.App. 218 [218 P. 475]; *Nulty* v. *Price* (1927), 202 Cal. 279 [260 P. 291]; *Bovais* v. *Cassassa* (1930), 108 Cal.App. 649 [291 P. 886]; *Mazzenga* v. *Rosso* (1948), 87 Cal.App.2d 790 [197 P.2d 770]; and *Kan* v. *Tsang* (1949), 90 Cal.App.2d 538 [203 P.2d 86].

Cal.2d 744, 760-763. By the complaint on file it is clear that plaintiffs were attempting to state a cause of action for damages for fraud. Their allegations as to the fact and substance of the fraud, and their reliance on it to their actual detriment, were adequate. They did not specifically allege damages under the theory and method of computation authorized by section 3343 but even under the limitations held to be imposed by that section the facts alleged tended at least inferentially to show that the actual value of the property purchased was less than the price paid. The defendants do not appear to have been misled or in anywise prejudiced by the failure of the plaintiffs to have earlier pleaded the more specific facts. Under these circumstances, and in accordance with the rule that amendments shall be liberally allowed in the interests of justice, we are satisfied that plaintiffs' request for leave to amend in the particulars noted should have been granted.

█ Our conclusion that the amendment should have been allowed is in accord with the general rule that where "the facts stated in the complaint show that the plaintiff is entitled to damages of some sort, it is not a fatal error that the pleader has mistaken the rule by which such damages should be determined." (*Warfield* v. *Basso* (1923), 62 Cal.App. 47, 49 [216 P. 48]; see, also, *Gallagher* v. *California Pac. T. & T. Co.* (1936), 13 Cal.App.2d 482, 486 [157 P.2d 195]; *Bonde* v. *Bishop* (1952), 112 Cal.App.2d 1, 5 [245 P.2d 617]; *Barr* v. *Southern Calif. Edison Co.* (1914), 24 Cal.App. 22, 25 [140 P. 47]; *Riser* v. *Walton* (1889), 78 Cal. 490 [21 P. 362]; *Sutter* v. *General Petroleum Corp.* (1946), 28 Cal.2d 525, 532-533 [170 P.2d 898, 167 A.L.R. 271].) In *Keidatz* v. *Albany* (1952), 39 Cal.2d 826, 829 [249 P.2d 264], relied upon by defendants, the statement that "Plaintiffs' complaint did not, however, allege that the property was worth less than the price they agreed to pay for it (Civ. Code, § 3343), and accordingly, it did not state a cause of action for damages for fraud," was made in the course of deciding that by the complaint being discussed plaintiffs were seeking to enforce rescission of the contract there involved rather than to recover damages for fraud, and is not controlling here. █ As we recently observed in *Porter* v. *Bakersfield & Kern Elec. Ry. Co.* (1950), 36 Cal.2d 582, 590 [225 P.2d 223], it is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. In the present case plaintiffs do not purport to have made a rescission nor do they plead facts (such as restoration or an offer to re-

store, promptness, etc.) entitling them to rescind. (See *Davis* v. *Rite-Lite Sales Co.* (1937), 8 Cal.2d 675, 678-679 [67 P.2d 1039].)

With respect to the contention of defendants Cummings that the evidence is insufficient to support a finding of fraud against them, the plaintiffs Mrs. Botto and Mrs. Eatwell testified that on the day of the transaction here involved Mrs. Cummings (who was managing the motel and collecting the rents) informed them that although "I don't have my books brought up to date . . . I know up . . . until today [October 19, 1948] I have done $450 worth of business this month." When Mrs. Eatwell "asked for the books she told me her books were not brought up to date." Mrs. Botto further testified that the following April Mrs. Cummings visited the motel and at that time Mrs. Botto "said to Mrs. Cummings, . . . 'Mrs. Cummings, why didn't you tell us the day we came out to look at the motel that . . . the place had been sold the day before, and it was not doing the business that [defendant] Mr. Beck had told us it was, and we would not have bought the place.' . . . She said, well, she started, but every time she started to say something, Mr. Beck would make a face or something or give her some expression on his face so that she wouldn't talk. . . . [And] she did make the remark that she had stopped a couple of deals for Mr. Beck." Mrs. Eatwell testified that Mrs. Cummings stated, "I wanted to say something to you, but every time I'd look at Beck, he'd frown and shake his head . . . We did mess up a couple of deals for him." It is apparent that the testimony quoted, when construed most strongly in favor of plaintiffs as is required on a motion for nonsuit (*Raber* v. *Tumin* (1951), 36 Cal.2d 654, 656 [226 P.2d 574], would support a finding of fraudulent misrepresentation on the part of Mrs. Cummings, upon which plaintiffs were entitled to rely. (See *Bagdasarian* v. *Gragnon* (1948), *supra,* 31 Cal.2d 744, 748; *Feckenscher* v. *Gamble* (1938), *supra,* 12 Cal.2d 482, 494.)

As to defendant Mr. Cummings, plaintiffs state that what they seek from him is "compensatory damages in the amount of $624.40 on the theory of unjust enrichment." The $624.40 (the amount sought from Mr. Cummings under the prayer in the complaint) represents sums paid by plaintiffs to the Cummingses to apply on the encumbrance which they held against the motel. Since it is not contended that this sum was not owing to the Cummingses we are aware of no

theory, and plaintiffs suggest none, upon which it could be recovered from Mr. Cummings. It follows that as to him, the motion for nonsuit was properly granted.

The judgment is affirmed as to defendant David Craig Cummings and is reversed as to all other defendants.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.