[Civ. No. 16966.   First Dist., Div. Two.   Oct. 8, 1956.]

MARIE L. FLEISCHER, Appellant, v. ANNA H. COSGROVE et al., Respondents.

Roy W. Seagraves and David Freidenrich for Appellant.

Crist, Peters & Donegan and Elton F. Martin for Respondents.

KAUFMAN, J.—This is an appeal from a judgment rendered in favor of defendants and respondents and against plaintiff and appellant for costs of court.

Respondents Anna H. Cosgrove and her son, William T. Cosgrove, signed a written contract for the sale and purchase of the Camino Hacienda Motel in Redwood City on March 14, 1954, for a price of $117,000. A deposit of $1,000 was made by the purchasers. Thereafter, respondents refused to consummate the transaction, and notice of their repudiation was given to David Freidenrich, appellant's assignor, through their attorney on or about March 24, 1954. Letters dated March 31, 1954, were mailed on that day by Freidenrich to respondents advising them that he was ready to perform, and that if they did not do so they could expect to be sued for specific performance and for damages. Receiving no reply to these letters, Freidenrich relisted the property for sale with the same broker at the same price as it had been previously listed, that is, for $117,000. He instructed the broker to remit one-half of respondents' $1,000 deposit to him which he retained.

On April 13, 1954, the broker, Rose Realty Company, sent a letter to respondents in which the broker said that Freidenrich had demanded forfeiture of the $1,000 deposit and urged them to reconsider and go through with the transaction. Freidenrich testified that he had not authorized this letter. The broker did not testify in regard to the matter.

A new contract for the sale of the motel property was entered into with a new purchaser in the latter part of April, 1954, for a sum of $109,796.96. Freidenrich stated that his opinion of the fair market value of the property at the time of the breach was $109,796.96, the price obtained for the property within 30 days after the breach. Freidenrich, who was an attorney, stated that he was not an expert on real estate values.

Robert G. Rose was the real estate broker here involved. It was stipulated that on the question of value of the property he would testify substantially the same as Mr. Freidenrich did; that in his opinion the value of the property at the date of the breach was the exact amount which it was sold for about a month later, and that he was basing his opinion on the subsequent sale price, that it wasn't based upon any rise or fall in the market.

The trial court held that appellant was entitled to no relief

against respondents, and that respondents were not entitled to the return of their $1,000, for which they had filed a cross-complaint.

Appellant contends that under the contract in this case he had the right to retain the deposit and sue for additional damages caused by the breach, and that the provisions of the deposit receipt did not deprive him of that remedy. It is provided in that document "That in event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, time being of the essence of this contract, the amount of said deposit shall at the option of the seller, be forfeited as liquidated damages, or the seller may apply said deposit on account of said purchase price and institute suit against the purchaser to compel the specific performance of this contract." Respondent takes the position that the contract provision for forfeiture of the deposit is a binding limitation on the amount of damages the seller can recover.

The trial court found that all the allegations of respondents' second, third and fourth answers were true. The second defense alleged that respondents mistakenly believed and plaintiff led them to believe that the agreement limited their liability in case of default to forfeiture of the deposit or an action for specific performance, and that on April 13, 1954, they were informed by the seller's broker that the seller had declared a forfeiture of the deposit and had made his election to pursue that remedy; that if they had known that there was an additional remedy by way of suit for damages available to the seller, they would not have signed the agreement. The third defense alleged mutual mistake, in that the seller as well as the buyer believed that there were only two possible remedies available under the contract, forfeiture of the deposit or a suit for specific performance.

The allegations of the separate defense of estoppel were found to be true; namely, that the seller prepared the agreement sued upon and represented that the only remedies available to seller were forfeiture of the deposit or specific performance; that respondents changed their position in reliance thereon, in that they made the deposit of $1,000 upon the understanding that that would be the limit of their loss if the contract were not specifically enforced.

The trial court also found that on March 14, 1954, the market value of the property to be sold under the deposit receipt was $117,000, that said market value did not change

between March 14, 1954, and May 5, 1954, and as a conclusion of law determined that appellant had not been damaged in any sum whatsoever by respondent. It also found that the resale price of $109,796.96, was not obtained because of a fall in the market value of said property between March 14, 1954, and May 5, 1954.

If the finding is supported that the market value of the property had not declined from the time of the sale to respondents through the period of a little more than six weeks till the date of the resale, such finding would be sufficient to support the judgment, and if the other findings attacked by appellant are unsupported by the evidence they may be disregarded. (*Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782]; *Colorado Corp.* v. *Smith*, 121 Cal. App.2d 374, 377 [263 P.2d 79].)

The measure of damages for breach of a contract to buy real property is the difference between the contract price and the market price. (Civ. Code, § 3307; *Royer* v. *Carter*, 37 Cal.2d 544, 549 [233 P.2d 539]; *Employees' Participating Assn.* v. *Pine*, 91 Cal.App.2d 299, 301 [204 P.2d 265].)

Appellant's assignor, Mr. Freidenrich, an attorney, who stated that he was not an expert in real estate values, testified that the resale price which was obtained some three weeks after the breach by respondents, was the fair market value of the property. It was stipulated that the testimony of the real estate broker, Robert G. Rose, would be substantially the same as that of Freidenrich. Freidenrich stated that he knew of no general drop in real estate values in that area, that his opinion of value was based on the resale price. He also testified that on March 14, 1954, the date of the agreement with respondents, the property was not overpriced at $117,000. It was about ten days later that he learned through an attorney that respondents did not intend to go through with the transaction. On April 13, 1954, Rose the broker wrote to respondents telling them that it was a big mistake not to go through with the sale as this property "is a good money maker and is doing better than most other motels in this area."

Appellant did not offer proof of any damage other than the difference between the contract price and resale price, except the $500 paid the broker out of the deposit. He contends that the evidence supports his claim to this amount of damage, and that there is no evidence to support the trial court's finding of no damage. Clearly from the testimony reviewed above there is some evidence to support the finding

that the resale price obtained was not a consequence of a drop in market value of the property. It is true, as appellant says, that there was no conflicting *opinion* evidence relating to value of the property at the time of breach. Freidenrich, as the owner, could give an opinion, though admittedly not an expert. Rose could testify as an expert, and his opinion was stipulated to be the same as that of Freidenrich. There was evidence that there was no decline in real estate values in the area. There was the evidence that the property was not overpriced on March 14, 1954, at $117,000. If there was no decline, and the property was not overpriced at $117,000 on that date, that is certainly some evidence of value close to the time of the breach. Each sale price is evidence of value to the owner at the time of such sale but neither is conclusive evidence binding on the trial court. The trial court could draw its own inference from this evidence. (*Royer* v. *Carter, supra*; *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 757 [192 P.2d 935]; *Roloff* v. *Hundeby*, 105 Cal.App. 645, 652 [288 P. 702].)

Appellant argues that the market price at the date of the first sale is irrelevant and immaterial. ▆ However, evidence of sales of the identical property is admissible as an indication of value of real property. (18 Cal.Jur.2d 624-626, § 164; *Bagdasarian* v. *Gragnon, supra*; *Eatwell* v. *Beck*, 41 Cal.2d 128, 134 [257 P.2d 643].) It is said in 18 Cal.Jur. 2d 627, § 166, that "evidence of value for short periods before or after the date in question may be allowed in the discretion of the court, as to either real or personal property." (And see *Stroman* v. *Lynch*, 91 Cal.App.2d 406 [205 P.2d 409]; *Hanscom* v. *Drullard*, 79 Cal. 234 [21 P. 736].)

There was evidence that $500 was paid by appellant to the broker, and since respondents were not allowed to recover the deposit of $1,000 for which they cross-complained, appellant has been compensated for that expense and retains the remaining $500. Respondents have not appealed from the judgment against them on the cross-complaint.

▆ Since the evidence sufficiently supports the trial court's finding of the market value of the property at the time of the breach it becomes unnecessary to determine whether or not the provision in the present contract must be interpreted according to appellant's view as not precluding the additional remedy of retaining the down payment and suing for the price. It also becomes unimportant whether the findings on respondents' separate defenses are conflicting

or unsupported by the evidence. ■ Numerous rulings of the trial court on the admission of evidence are objected to, but since the trial was by the court, it will be presumed that the findings were based on competent evidence if there is such competent supporting evidence in the record. The evidence reviewed above which supports the finding of reasonable value at the time of breach was admissible and competent.

We conclude that the trial court's finding that appellant suffered no damage finds ample support in the record before us.

Judgment affirmed.

Nourse, P. J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.