(April 22, 1916.)

ADELHAID WOLTER, Appellant, v. D. D. DIXON, Respondent, and ADELHAID WOLTER, in Her Own Proper Person as Widow and Administratrix of the Estate of PETER WOLTER, Deceased, Appellant, v. D. D. DIXON, Respondent.

[157 Pac. 250.]

CONTRACT — BREACH—PLEADINGS—AFFIRMATIVE DEFENSES—RELIANCE—DEMURRER—ACTION UNLAWFUL DETAINER—COUNTERCLAIMS—INDEPENDENT ACTIONS—REAL PROPERTY—VENDOR'S TITLE—GOOD AS TO VENDEE—CHATTEL MORTGAGE AND PROMISSORY NOTES—UNEXECUTED—ATTEMPTED TENDER—FINDINGS AND JUDGMENT—SUPPORT.

1. Where it is impossible to determine from the allegations of an answer upon which of two affirmative defenses defendant relies, a demurrer to the answer should be sustained upon that ground, since plaintiff is entitled to know upon which of the defenses in question defendant relies.

2. In an action growing out of a written agreement for the sale of real and personal property, where the contract in express terms provides for deferred payments to be made at stipulated dates and amounts, matters cannot be set up by defendant in way of offset or counterclaim which are subject to an independent action, and in nowise grew out of or were germane to any of the terms or conditions contained in the written agreement; and a demurrer to the answer upon that ground should be sustained.

3. In a summary proceeding brought for the express purpose of recovering possession of real property upon a breach of a specific condition in a contract, which contract could be terminated upon proof of a breach of any of its terms or conditions, breaches of subsequent contracts or agreements cannot be pleaded as a defense.

4. In an action growing out of the breach of a written agreement for the sale of real property, which provides that "Time is agreed to be the essence of this contract and in case of default in any deferred payment as above set forth, the said party of the second part shall forfeit any rights he may have to said premises . . . . and he shall surrender possession of said land and improvements thereon, if any, to said party of the first part," where the answer admits a failure to pay the first deferred payment in accordance with the provisions of the written contract, and sets up as jus-

tification therefor separate and distinct agreements from the one which is the subject of the action, such separate agreements and any damages flowing from a breach thereof must be the subject of an independent action.

5. In an action growing out of an agreement for the sale of real property, one of the terms of which was the payment of taxes by the vendee, where defendant admits in an answer that he did not pay such taxes, and sets up as justification therefor that the vendor did not have authority at the time when the taxes became due to sell or dispose of the premises described in the written contract, such plea constitutes no defense to the action under the terms of the contract which provides that the vendor was under no obligation to convey the premises until the purchase money had been paid in full together with all taxes.

6. A would-be purchaser in possession of land under an executory contract for the purchase of the same is estopped from denying his vendor's title.

7. The proffer of an unexecuted and unacknowledged chattel mortgage and of unexecuted promissory notes, or the tender of the same in court, is not a compliance with the terms of a contract requiring the execution and delivery of such chattel mortgage and promissory notes.

8. *Held,* that the evidence fails to support the findings of the court, and the findings do not support the judgments.

APPEAL from the District Court of the Fourth Judicial District, for Lincoln County.   Hon. W. A. Babcock, Judge.

Actions to recover on breach of contract.   Judgments for defendant.   *Reversed.*

A. L. Fletcher, J. J. McFadden and W. A. Brodhead, for Appellant.

The demurrer to the answer should have been sustained, because the answer was filed in a summary proceeding to recover possession of real estate, and involved the consideration of three separate and distinct items of counterclaim, one of which was unliquidated and founded upon the negligence of appellant. (*Hunter v. Porter,* 10 Ida. 72, 77 Pac. 434; *Ralph v. Lomer,* 3 Wash. 401, 28 Pac. 760; *Phillips v. Port Townsend Lodge,* 8 Wash. 529, 36 Pac. 476; *Owens v. Swanton,* 25

Wash. 112, 64 Pac. 921; *Carmack v. Drum,* 27 Wash. 382, 67 Pac. 808.)

There was nothing in the answer to show whether respondent would rely upon contract or tort as the basis of his claims, since the answer set up a claim based on negligence and in the same paragraph set up an agreement to pay, and there was no statement of facts constituting his cause of action against appellant required by Rev. Codes, secs. 4168 and 4184–4187, and the approved forms and rules of pleading. (*Moore v. Evans,* 24 Ida. 153, 132 Pac. 971; *First Nat. Bk. of Hailey v. Bews,* 3 Ida. 486, 31 Pac. 816; *McGuire v. Lamb,* 2 Ida. 378, 17 Pac. 749; *Swanholm v. Reeser,* 3 Ida. 476, 31 Pac. 804.)

A mere statement of intention or a promissory expression made without intention to contract is not such an offer as may be turned into an agreement by acceptance. (9 Cyc. 276; *Lakeside Land Co. v. Dromgoole,* 89 Ala. 505, 7 So. 444; *Perkins v. Westcoat,* 3 Colo. App. 338, 33 Pac. 139; *Higgins v. Lessig,* 49 Ill. App. 459; *Stagg v. Compton,* 81 Ind. 171; *Phillips v. Van Schaick,* 37 Iowa, 229; *Marsh v. Tunis;* 39 Mich. 100; *Bolles v. Walton,* 2 E. D. Smith (N. Y.), 164.) The lack of authority on part of appellant to convey was no excuse for respondent's failure to perform strictly as he had agreed in his contract. (*Rischar v. Shields et ux.,* 26 Ida. 616, 145 Pac. 294.) A would-be purchaser in possession of land under an executory contract for the purchase of the same is estopped from denying his vendor's title. (*Page v. Bradford-Kennedy Co.,* 19 Ida. 685, Ann. Cas. 1912C, 402, 115 Pac. 694.)

A plea of tender cannot be supported, unless accompanied by the payment of the money into court. (*Park v. Wiley,* 67 Ala. 310.)

There was no tender of chattel mortgage. A plea that the defendant was ready and willing to perform or deliver the articles at the time and place stipulated is insufficient. Readiness does not amount to a tender. (*Brooklyn Bank v. De Grauw,* 23 Wend. (N. Y.) 342, 35 Am. Dec. 569.)

Offer of a certain sum in satisfaction of an unliquidated claim does not operate as a legal tender if refused. (*Mc-Daniels v. Bank of Rutland,* 29 Vt. 230, 70 Am. Dec. 406; *San Pedro Lumber Co. v. Reynolds,* 121 Cal. 74, 53 Pac. 410.)

A tender of less than amount due is bad. (*Rose v. Duncan,* 49 Ind. 269; *Barnes v. Greene,* 30 Iowa, 114; *Call v. Lothrop,* 39 Me. 434; *Martin v. Whisler,* 62 Iowa, 416, 17 N. W. 593.)

In the case of a conditional sale, the loss of the property sold falls upon the purchaser. (*Harley & Willis v. Stanley,* 25 Okl. 89, 130 Am. St. 900, 105 Pac. 188; *Burnley v. Tufts,* 66 Miss. 48, 14 Am. St. 540, 5 So. 627; *Osborn v. South Shore Lumber Co.,* 91 Wis. 526, 65 N. W. 184.)

The covenant to convey and to pay the first instalment were not concurrent. In the sale of land upon instalments it is only the payment of the last instalment and the delivery of the deed that are mutually concurrent and dependent obligations, and no tender of deed is necessary. (*Rischar v. Shields, supra; Brentnall v. Marshall,* 10 Kan. App. 488, 63 Pac. 93; *Voight v. Fidelity Inv. Co.,* 49 Wash. 612, 96 Pac. 162.) His obligations to make the payments and give the security were independent covenants.

Harlan D. Heist, for Respondent.

"The general rule that a vendor of land in order to enforce any rights under the contract of sale must himself be in a situation to give such title as he has undertaken to give, is undisputedly established and has been frequently applied in cases where the vendor sought to enforce forfeiture as against the vendee." (Warvelle, Vendors, 2d ed., sec. 813.)

"The vendor cannot rescind when he is not in a position to perform his own undertaking." (*Converse v. Blumrich,* 14 Mich. 109, 90 Am. Dec. 230; *Wallace v. McLaughlin,* 57 Ill. 53.)

"The fact that time is of the essence of the contract will not enlarge the right of a vendor who is not in a condition to convey, to declare a forfeiture for the vendee's default in payment." (*Baker v. Bishop Hill Colony,* 45 Ill. 264; *Frink v. Thomas,* 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239.)

"The question of whether or not it need be the first or last, or any intermediate payment on a contract of this nature is treated as immaterial." (*Sievers v. Brown,* 34 Or. 454, 56 Pac. 171, 45 L. R. A. 642.)

In matters of conditions precedent, even to take the extreme view of it, it would not have been necessary for the respondent to have executed these papers. The fact that the appellant had already refused to accept them if executed, of which respondent had due notice, would be sufficient. (*Remy v. Olds,* 88 Cal. 542, 26 Pac. 355; *Koyer v. Willmon,* 150 Cal. 785, 90 Pac. 135; *Lowe v. Yolo County Consol. Water Co.,* 8 Cal. App. 167, 96 Pac. 379.)

"A forfeiture is a harsh remedy and will not be allowed except upon clear proof of a breach of the terms of the contract upon which such forfeiture is to be declared." (*Harris v. Reed,* 21 Ida. 365, 121 Pac. 780; *King v. Seebeck,* 20 Ida. 223, 118 Pac. 292.)

BUDGE, J.—By stipulation of counsel two actions brought by appellant against the respondent in the district court of the fourth judicial district in and for Lincoln county, are presented in one transcript and were argued and submitted together. The two cases are the result of an agreement to sell certain real and personal property made by appellant, who is the widow of Peter Wolter, deceased.

The agreement to sell, on the part of appellant, and to buy, on the part of respondent, was signed on September 11, 1913, and recites a cash payment of $100, made at the time, and that the further sum of $5,900 should be paid according to the schedule in the agreement, by which it appears that there was to be $400 paid on November 1, 1913, and $500 paid on January 1, 1914, then beginning with January 1, 1919, there was to be a payment of $1,000 each year until the whole amount of the purchase price agreed upon had been fully paid, these $1,000 payments to be evidenced by five promissory notes to be executed by respondent. Interest at the rate of six per cent per annum was to be paid by respondent on all deferred payments. The payment of $500 due January 1, 1914, was

designated as the first deferred payment. This agreement does not purport to include the personal property involved in the second suit, but the record discloses that it was understood by the parties at the time the agreement was made that all personal property on the farm, comprising the horses, cows, hogs, farming implements and crops raised thereon that year, of the value of approximately $3,050, was to be included, with no consideration to be paid therefor, other than that to be paid for the real estate.

After the agreement for the sale was actually signed, and with the knowledge and consent of the parties, a marginal notation was made upon the written document which, as appears from the evidence, the parties agreed meant that respondent was to execute a chattel mortgage on the personal property in favor of appellant, to stand for one year for the purpose of securing appellant for the payment of the first deferred payment to herself, and the next payment of principal and interest to the Idaho Irrigation Company, upon a certain water contract, to be due April 1, 1914. It was understood and agreed, also, that appellant should execute a bill of sale covering the personal property and deposit the same with the agreement to sell the real estate in the First State Bank of Richfield, and that these two instruments should not be delivered to respondent until he had complied with his agreement regarding the execution of the chattel mortgage, etc. The agreement also provided for the payment of the taxes for the year 1913 by respondent.

After the foregoing papers (except the chattel mortgage and the five promissory notes) had been executed, some sort of an understanding was evidently reached between appellant and respondent, to the effect that appellant was to remain on the premises until respondent had returned from Washington with his family and effects, after which he was to occupy the farm and appellant was to remove to Hailey. The respondent arrived about the time specified and made the payment of $400, due November 1, 1913, and took actual possession of the premises involved in the action, but did not then execute the chattel mortgage nor the five promissory notes.

In the meanwhile, and prior to his arrival, a cow and 'calf, which were among the personal property to be thrown in with the purchase of the real estate, had died.

Respondent did not pay the taxes for 1913, as agreed, and appellant paid same on January 3, 1914. Neither did respondent make the payment to appellant, due January 1, 1914. And it appears from the record that on or about January 12, 1914, appellant went to Richfield to see respondent and adjust the matter of these payments. At this meeting a dispute arose between the parties concerning three amounts for which respondent claimed he should be allowed credit upon, or be permitted to offset against, the first deferred payment of $500. Respondent claimed that appellant should pay him for the cow and calf which had died, and also that she should pay him the amount of a certain rebate allowed by the Idaho Irrigation Company, and the interest which had accrued on the water contract between April 1, 1913, and the date of the agreement, September 11, 1913.

It appears that at this time appellant refused to allow these items, but did offer to allow the rebate and admitted that she should stand that portion of the year's interest on the water contract. A few days after this meeting respondent, accompanied by a Mr. Brush, the real estate agent who had negotiated the sale of the real estate, called on Mr. Fletcher, who had acted for Mrs. Wolter, and told him that they were ready to pay the amount due her after deducting the three items in dispute, and after Mr. Fletcher had told them that he could not accept the amount, they claimed to have made a tender to him in the form of a check for $331.99. We do not think, however, that it will 'be seriously claimed that upon this occasion respondent tendered to Mr. Fletcher the chattel mortgage he had agreed to execute and deliver to Mrs. Wolter, or the five promissory notes provided for in the written contract.

On April 7, 1914, appellant declared the respondent's rights under the contract forfeited because of his failure to make the first deferred payment, to pay the taxes for 1913, to make the payment on the water contract, to execute the five promis-

sory notes and to give her the security called for by the agreement, and also served a notice on him terminating his tenancy in the premises. The service of the notices was followed by the institution of these two actions. One of these actions was first filed in the probate court for Lincoln county, and was an action to recover the possession of the real estate, and the complaint set forth the circumstances under which respondent held, the breach of his agreement and the demand for compliance, and prayed for relief. The other action was in claim and delivery for the purpose of recovering the personal property or the value thereof, which was alleged to be $3,050, and was originally brought in the district court. The action in the probate court was later transferred to the district court on respondent's motion, on the ground that the title or right to the possession of real estate was involved.

The two cases were heard by the trial court, sitting without a jury, on stipulation of counsel, resulting in a judgment in both actions in favor of respondent, from which judgments these appeals are taken.

Counsel for appellant in their brief set out twenty assignments of error, but we do not deem it necessary to separately discuss them. We will confine ourselves to a consideration of the sufficiency of respondent's amended answer, and whether the evidence is sufficient to support the findings and whether the findings are sufficient to support the judgment.

We will first direct attention to the action of the trial court in overruling appellant's demurrer to respondent's amended answer. The action which was originally brought in the probate court was instituted by appellant for the purpose of repossessing herself of the real estate described in the contract entered into by the parties to this litigation, and is an action of unlawful detainer. The right of respondent to the possession is fixed and provided for in the contract, and in order to warrant the court in awarding the possession of the premises to appellant it must appear that there has been a breach of the provisions thereof on the part of respondent. If the answer of respondent fails to sufficiently deny the allegations of a breach of the contract, or to set up affirmatively a sufficient

justification or excuse for failure to abide by the terms and conditions of the contract, it would necessarily follow that the trial court erred in overruling appellant's demurrer to respondent's answer.

Appellant seeks restitution of the property and to recover damages for the unlawful detention thereof, by reason of the failure of respondent to make the first deferred payment of $500 with interest, due under the terms of the contract on January 1, 1914; his failure to pay the taxes on the real estate described in the contract for the year 1913 prior to the time they would become delinquent under the law; his failure to pay the amount of principal and interest due on a certain water contract with the Idaho Irrigation Company which became due on April 1, 1914; his failure to execute and deliver a chattel mortgage covering the personal property described in the bill of sale which was executed by the appellant at the same time the written agreement was entered into, which chattel mortgage was to secure the first deferred payment of $500 and the payment on the water contract due January 1, 1914, and April 1, 1914, respectively; and for his failure to execute and deliver to her the five promissory notes each for $1,000 bearing interest at the rate of six per cent per annum, all of which provisions were contained in the written contract.

Respondent in his amended answer admits that he failed to pay the $500 and interest on January 1, 1914, according to the terms of the contract, but alleges as an excuse for his failure that he was entitled to certain credits or deductions which he insists appellant promised to allow him. The first of these credits which respondent claims is the value of the cow and calf that died after the written agreement was entered into, the $100 paid and the bill of sale executed, and both these instruments deposited in escrow, and during the time appellant was left in charge of the premises and personal property while respondent was moving his family and effects from Washington to these premises. Respondent maintains that appellant agreed to allow him $100, the alleged value of the cow and calf, upon his indebtedness, and insists

that that amount should be deducted from the first deferred payment due under the contract, together with some other items to be noticed hereafter.

It is alleged in the amended answer for a further and separate defense to appellant's complaint, that on or about October 1, 1913, appellant, while discharging her duties toward respondent in caring for said personal property, negligently and carelessly permitted a certain cow and calf to feed on and pasture old hay, with the effect that said cow and calf died, to the loss and damage of respondent in the sum of $100; and that on or about October, 1913, appellant agreed in writing to pay respondent therefor the sum of $100. The answer fails to allege that there was any consideration moving from respondent to appellant to support the promise to pay the $100 for the cow and calf. At most, under this allegation in the answer, the appellant became the gratuitous bailee for the respondent, and would be liable only for gross negligence. It is impossible to determine from the allegations in the answer whether respondent relies upon the gross negligence of appellant which would entitle him to recover, or whether he relies upon the promise to pay. Appellant was entitled to know upon which of these grounds he relied for a recovery. The demurrer should have been sustained to this allegation of respondent's amended answer.

Furthermore, from the record it clearly appears that there was no consideration to support the alleged promise, which in fact was not a promise, but an offer. Appellant was under no legal liability to reimburse respondent for the cow and calf any more than she would have been had the grain in the bin been destroyed, in the absence of sufficient allegations in the amended answer of gross negligence upon her part which resulted in the loss. It also appears that the loss of the cow and calf was sustained prior to the first payment of $400 due and made under the written agreement. Respondent did not claim that the loss by reason of the death of this cow and calf should be deducted from the first payment to be made under the contract. The contract does not provide against any such loss, or that any credits to which respondent may claim to be

entitled shall be deducted from any of the stipulated payments, but does provide in express terms that respondent should make his first deferred payment in the sum of $500 and interest on January 1, 1914; and under the terms of this contract it was the duty of respondent to make such payment at that time. Therefore, we think these allegations in the amended answer were subject to the objections urged.

The next item which respondent insists he should be allowed as a credit, and which should be deducted from the first deferred payment is an item of interest amounting to $51.62 accrued on the water contract between April 1, 1913, and September 11, 1913, which became due on April 1, 1914. Upon what theory he could claim this credit we are unable to comprehend. Admitting that the amount had accrued upon the contract prior to September 11, 1913, it was not due on January 1, 1914, and there was no consideration to support a promise, if one was made, by appellant to respondent to deduct said sum from the first deferred payment. Respondent does not allege that he paid to the Idaho Irrigation Company the item of $51.62, or that he was obligated to pay it, and we fail to see by what authority he should exact from appellant this amount on January 1, 1914, when the same was not due to the Idaho Irrigation Company until April 1, 1914. Since appellant would have no means of knowing that said amount would be correctly applied on the water contract even if paid to respondent in advance of the date upon which it became due, she was clearly justified in refusing to consider that item, and the court erred in admitting any testimony with reference to it and in deducting it from the $500 due under the terms of the contract January 1, 1914.

The last item on which credit is claimed is referred to in the answer as a rebate allowed by the Idaho Irrigation Company in the sum of $55.86; but there is no allegation in the answer that the appellant promised to deduct said amount from the first deferred payment or from any other payment, or that this sum had been paid by the Idaho Irrigation Company to appellant, or when or in what manner or for what reason. There are no allegations in the answer upon which

appellant's liability to pay said amount to respondent can be based. The answer merely contains a statement that the respondent in making the alleged tender of $331.99 deducted $55.86, which he designates as a rebate allowed by the Idaho Irrigation Company. The answer fails to allege that said rebate belonged to respondent; and there is no provision in the written agreement to the effect that any rebate allowed, or that might be allowed, to appellant should be deducted from any of the payments stipulated in the written agreement, or that said rebate should belong to respondent. In other words, there is no issue tendered upon this subject; and it in nowise grew out of, or was germane to, any of the terms or conditions contained in the written agreement. This item, as well as the other two mentioned, was subject to an independent action, and could not be set up as an offset, counterclaim or credit against the amount agreed to be paid on the first day of January, 1914.

We are of the opinion that the demurrer to the amended answer should have been sustained so far as the above items were concerned, and that the court erred in admitting evidence in support of them. At best, these items, however they may be designated, under the pleadings in this case, can be considered in no other light, even admitting that appellant was liable, than as independent agreements, for a breach of which respondent could maintain an independent action.

This, it will be remembered, is a summary proceeding brought under the statute for the express purpose of recovering possession of real estate upon a breach of specific conditions contained in a written contract, which contract may be terminated upon proof of a breach of any of its terms or conditions. If, in a proceeding of this nature, breaches of subsequent independent agreements were permitted to be pleaded as a defense or justification of a breach of such a contract, an owner of premises could be deprived of their use and possession, of the rents and profits accruing therefrom, and of the payments to be made under the contract, pending the ultimate determination of the breaches of such subsequent and independent agreements. This we do not think was the

purpose of the statutes governing summary proceedings in actions of unlawful detainer.

The written agreement involved in this case provides that "Time is agreed to be the essence of this contract and in case of default in any deferred payment as above set forth, the said party of the second part shall forfeit any rights he may have to said premises . . . . and he shall surrender possession of said land and improvements thereon, if any, to said party of the first part." The answer admits a failure to pay the first deferred payment on January 1, 1914, of $500 and interest, and sets up as a justification therefor separate and distinct agreements from the one which is the subject of this action. These separate agreements, if enforceable, and any damages flowing from a breach thereof, would be the subject of an independent action, for which the respondent should be confined to a separate action at law. (*Hunter v. Porter,* 10 Ida. 72, 77 Pac. 434; *Carmack v. Drum,* 27 Wash. 382, 67 Pac. 808.)

The written agreement provides, among other things, that respondent is to pay all taxes for the year 1913, and that "should he fail, refuse or neglect to pay the same, the party of the first part [appellant] may pay them and add the amount so paid to the amount due on this contract and it shall, when so paid, become a part of the purchase price of said real estate." The complaint alleges the failure on the part of respondent to pay the taxes for 1913 and the payment of them by appellant. Respondent, in his amended answer, admits that he did not pay the taxes as stipulated in his written contract, but attempts to justify not on the ground that in case of his failure to pay them they should be paid by appellant and added to the purchase price of the real estate, but for the reason that appellant did not have the authority on January 3, 1914, when the taxes became due, to sell or dispose of the premises described in the written agreement, because she had not received such authority from the probate court of Lincoln county. Under the terms of the written contract, a plea of this character constitutes no defense to this action. The contract expressly provided that appellant was under no

obligation to convey the premises until the purchase money had been paid in full, together with all of the taxes, etc. The lack of authority to convey was no excuse for respondent's failure to perform strictly the provisions of the contract on his part to be performed. (*Rischar v. Shields,* 26 Ida. 616, 145 Pac. 294.) A would-be purchaser in possession of land under an executory contract for the purchase of the same is estopped from denying his vendor's title. (*Page v. Bradford-Kennedy,* 19 Ida. 685, Ann. Cas. 1912C, 402, 115 Pac. 694.)

When the contract was entered into respondent was aware that appellant was acting in her representative capacity, and he had knowledge of the fact that the estate was in course of probate. The contract was breached in this respect, prior to the notice to surrender the premises, and no tender was made to appellant of the amount of taxes and interest before the commencement of the action of unlawful detainer in the probate court, or afterward in the district court.

Respondent insists that he was entitled to deduct the three items heretofore discussed from the $500 due on January 1, 1914, and that he deducted said amounts and tendered to appellant the balance, viz., $331.99. Without discussing the sufficiency of the tender, we are forced to the conclusion that the terms of the contract which provide that respondent "is to pay interest at the rate of six per cent per annum on all deferred payments," were not complied with. There was no interest on the deferred payment included in the $331.99, the amount alleged to have been tendered to appellant. Therefore there was no proper and legal tender which would relieve respondent of his obligation to pay the $500, with interest on January 1, 1914.

It is alleged in the complaint that the chattel mortgage to be given by respondent to appellant was to secure the first deferred payment as specified in the written agreement and also to secure the payment on the water contract due the Idaho Irrigation Company on April 1, 1914. The amended answer denies that the chattel mortgage was to be given for these purposes. The court found upon this issue: "That the

defendant was also to deliver to the plaintiff a certain chattel mortgage upon the personal property then on the premises,'' but failed to find whether this chattel mortgage was to be given to secure the first deferred payment and the payment on the water contract. However, we think that the evidence establishes the fact that it was clearly the intention of the parties that the chattel mortgage was for these purposes.

Respondent admits that he was to give the chattel mortgage, and that he had tendered it to appellant, but that she had refused to accept it. The chattel mortgage is here as an exhibit in the case, and it appears to have been neither signed nor acknowledged by respondent and his wife; nor does it contain a description of the personal property enumerated in the bill of sale which it was to cover. And it is in fact not a chattel mortgage, but simply in effect a blank form.

The five promissory notes for $1,000 each, mentioned in the written contract, which were to be executed by respondent and his wife, are not found among the exhibits. But it appears from the record that they were not executed. Interest coupons are found among the exhibits, but they are not signed. A letter written by Mr. Brush fully explains the possession of these documents by appellant. This letter indicates that the chattel mortgage and the notes, in the condition above mentioned, were forwarded by Mr. Brush to appellant for the sole purpose of securing his commission—he was acting as agent of the appellant in this transaction—and were not sent to her for the purpose, as contended by respondent, of inspection and approval. They were not in proper legal form at the time they were sent to appellant or when they were tendered into court, and appellant would, under no circumstances, be required to accept unsigned notes or an unsigned and unacknowledged chattel mortgage.

The finding of the court that respondent had made an offer to execute and deliver notes and mortgage in accordance with the contract which appellant refused to accept is not supported by the evidence. It was not a question of an offer to execute and deliver, but rather, had respondent under the terms of his contract, executed and delivered or tendered the

notes and mortgage prior to the time appellant declared a forfeiture? It is clear from the testimony that he had not.

Adverting to the payment on the water contract which the chattel mortgage was to secure, the written agreement stipulated that respondent was to make this payment of principal and interest to the Idaho Irrigation Company on April 1, 1914. This he failed to do, and thereby breached his written contract in another particular.

The trial court failed to make any finding of the right to the possession of respondent or appellant of the personal property, but in its judgment decrees the possession of the personal property to the respondent, basing its judgment, no doubt, upon the theory that the terms of the written contract had been fully complied with and that there was no breach. The evidence fails to sustain the judgment of the court in awarding the possession of the personal property or the right to the possession of the real estate to respondent. The sale of the personal property to the respondent was conditional, the title to remain in the appellant until the terms of the contract were complied with. And the enjoyment of the right to the possession of the personal property by respondent depended upon his strict compliance with each and all of the terms of the written contract.

The evidence, to our minds, establishes a breach of the written contract in the following respects:

(1) The failure of respondent to make the first deferred payment of $500, with interest on January 1, 1914; (2) his failure to pay the taxes for 1913; (3) his failure to make the payment to the Idaho Irrigation Company of principal and interest on the water contract, due April 1, 1914; (4) and his failure to execute and deliver or tender the chattel mortgage to appellant to secure the first deferred payment and the payment on the water contract, and to execute and deliver to appellant the five promissory notes for the balance of the purchase price of the real estate.

The evidence fails to support the findings of the court; and the findings do not support the judgments.

It follows from what has been said that the judgments entered by the trial court in favor of respondent in these two cases must be reversed and the causes remanded, with instructions to the trial court to enter judgments in favor of appellant for restitution of the premises with damages for the unlawful detention, and for the recovery of the personal property, or, in case a recovery cannot be had, that judgment be entered in favor of appellant for its value; both to be determined by the trial court from the record; and it is so ordered. Costs are awarded to appellant.

Sullivan, C. J., concurs.

Morgan, J., dissents.