ALLREAD, J., of the Second Appellate District, sitting in place of BLOSSER, J.

CONDORODIS ET AL. *v.* KLING.

(Decided May 7, 1928.)

*Mr. Wm. A. Rinckhoff,* for appellants.
*Mr. Julius R. Samuels,* for appellee.

MILLS, J.   This case is here on appeal from the court of common pleas, where the plaintiffs, John Condorodis and Sam Condorodis, sued, on April 21, 1927, to enforce specific performance of a certain contract, whereby defendant, Meyer Kling, had agreed to purchase from plaintiffs certain real estate in Cincinnati, Hamilton county, Ohio.

The contract sued on was dated March 11, 1927, and consisted of defendant's written offer to purchase and the plaintiffs' written acceptance thereof.

This contract stipulated $15,000 as the purchase price, payable in cash "upon transfer of the property," with the further provision that title to the property was to be transferred on or before 30 days from March 11, 1927, "by deed of general warranty with release of dower, clear, free, and unincumbered," except as to certain claims for unpaid taxes.

The contract further recited that defendant had deposited $500 with plaintiffs "as earnest money to apply on the purchase price, same to be refunded * * * if the title of the above is found defective and cannot be remedied. Balance of the purchase price to be paid * * * cash upon transfer of property."

In the contract the plaintiffs guaranteed that no part of the premises was under lease, and that there were no building or health orders against the property.

On March 31, 1927, a certain suit was filed and duly docketed in the court of common pleas of Hamilton county, Ohio, against John Condorodis and Sam Condorodis, seeking a money judgment against them in excess of $10,000, as damages for alleged malicious prosecution. That suit remained untried until May 20, 1927, when a verdict was returned by a jury in favor of the defendants therein; thereafter the suit remained further undisposed of until June 13, 1927, when a final judgment was entered in favor of Condorodis and Condorodis.

On April 6 the defendant notified plaintiffs that the pending suit for damages constituted a defect in the title.

Plaintiffs concede that from April 6 to April 11 defendant was ready, willing, and able to pay the purchase price, and to accept a deed for the property in question, on the sole condition that the pending suit for damages be first dismissed, or otherwise finally disposed of, and that the defendant not only notified plaintiffs to such effect, but also demanded that plaintiffs carry out their contract by conveying to him a title that was clear, free, and unincumbered,

Defendant conceded that plaintiffs were from April 6 to April 11 ready, able, and willing to convey said property clear, free, and unincumbered, except for the pendency of the suit for damages.

It is further conceded that on April 20 the plaintiffs tendered to defendant a properly executed and acknowledged deed for the property, but that defendant refused to accept the deed.

Plaintiffs contend that, notwithstanding the pendency of the action for money damages against the owners, the real estate was "nevertheless clear, free, and unincumberred."

Section 11655, General Code, reads as follows:

"Lands and tenements, including vested legal interests therein, permanent leasehold estates renewable forever, and goods and chattels, not exempt by law, shall be subject to the payment of debts, and liable to be taken on execution and sold as hereinafter provided."

Section 11656, General Code, which was in force until August 1, 1927, applies to this case, and provides as follows:

"Such lands and tenements within the county where the judgment is entered shall be found for its satisfaction from the first day of the term at which it is rendered, except that judgment by confession and judgments rendered at the same term at which the action is begun, shall bind such lands only from the day on which such judgments are rendered. All other lands as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution."

Section 1555 reads as follows:

"The regular terms of the court of common pleas

in and for the county of Hamilton shall begin on the first Monday of January, the first Monday of April, the first Monday of July, and the first Monday of October, in each year.''

It cannot be denied that any judgment that might have been rendered against Condorodis and Condorodis between April 4, 1927, and July 4, 1927, in the action for damages instituted March 31, would have been a lien upon the real estate in question, even if the title thereto had been at any time within the last-mentioned period, conveyed to the defendant herein.

It cannot be denied that during said period of time this property, even after its purchase within that period by the defendant herein, would have been liable to eventual sale on execution to satisfy any such judgment as might have been, within that period of time, rendered against the present plaintiffs in said action for damages.

Was the property clear, free, and unincumbered during that period?

Among the classified definitions of the word ''clear'' in the Oxford (Unabridged) Dictionary we find the following:

''*Clear*. Of free, unincumbered condition. Free from all limitation, qualification, question or shortcoming; absolute, complete, entire, free, sure, sheer.''

The title could scarcely be called free from all question or shortcoming, so long as it was liable to be taken and sold on execution to satisfy a possible judgment.

The lexicographers say also that the word ''clear,'' when used in the phrase ''clear from,'' is often equivalent to the phrase ''free from.'' And

in *Roberts* v. *Bassett,* 105 Mass., 409, it is said that the term "clear title," as used in a contract to convey land, requires that it be conveyed with "no incumbrance thereon."

The words "clear, free, and unincumbered" may therefore be interpreted as a mere redundancy for "free from incumbrances." "Incumbrance" is a broader term than "lien." *First Church of Christ* v. *Cox,* 47 Ind. App., 536, 538, 94 N. E., 1048.

An incumbrance on land has been defined to be any right to or interest in the land that may subsist in any person other than the owner to the diminution of the value of the estate, though consistent with the conveyance of the fee. *People's Savings Bank Co.* v. *Parisette,* 68 Ohio St., 450, 459, 67 N. E., 896, 96 Am. St. Rep., 672; *Huyck, Admr.,* v. *Andrews,* 113 N. Y., 81, 85, 20 N. E., 581, 3 L. R. A., 789, 10 Am. St. Rep., 432. Rawle on Covenants (5th Ed.), Section 75.

We hold that the pending suit for damages was an incumbrance from April 2 to June 13, and that the land in question was therefore not clear, free, and unincumbered during that period.

Plaintiffs proposed to the defendant in April that he accept the title at once as it then was, notwithstanding the pending suit, in consideration of their furnishing a bond to indemnify him against the sale of this property on execution, under any judgment that might be rendered against the plaintiffs in that suit. They claim that this proposition should have been accepted. But defendant had stipulated for an unincumbered title. He was under no obligation to accept a title that was incumbered, and therefore unmarketable. He had stipulated for a title, not for

a bond; and the bond would not only be ineffectual in clearing the title, but might even involve him in litigation upon the bond itself.

Plaintiffs contend that, even if the property be deemed to have been incumbered from April 2 to June 13, the contract should now be enforced against the defendant, because the property is now, and has been ever since June 13, 1927, clear, free, and unincumbered.

They contend that time was not of the essence of this contract, and that performance within a reasonable time was in contemplation of the parties, notwithstanding the fact that the contract specified that the sale should be consummated within 30 days.

They contend that, even if time was of the essence of this contract, the defendant waived that requirement by negotiating as late as April 20 for the clearing of the title, by disposing of the pending suit.

In connection with this point it is in evidence that the defendant, on or about April 15, notified plaintiffs that he was willing to take the property if the title was cleared of the pending suit for damages by May 15; otherwise, the ''deal was to be called off,'' and defendant's earnest money returned to him.

Time may be made to be of the essence of a contract by express stipulation of the parties, or by the nature of the contract itself, or of the circumstances under which the contract was made. *Kirby* v. *Harrison,* 2 Ohio St., 327, 333, 59 Am. Dec., 677. And when time is not of the essence, and the contract is still wholly executory, a party who is not in default, and who is ready, able, and willing to perform, may, by serving notice on the other party, requiring him to perform within a reasonable time,

make such performance a condition of his own further liability. Williston on Contracts, Section 852, and cases noted; Page on Contracts (2d Ed.), Section 2107; *Kirby* v. *Harrison, supra.* And in the absence of such express notice, and when the contract is still wholly executory, a party who has omitted to perform his part of the contract by the time appointed for that purpose, without sufficient justification or excuse for his delay, and in the absence of any act or conduct of the other party that amounts to an acquiescence in that delay, is not entitled to specific performance against the other party. *Kirby* v. *Harrison, supra.*

In executory contracts to buy and sell, time is of the essence in an action at law. Williston on Contracts, Section 847. And we take the law to be that, in those cases where equity declines to recognize the time specified in the contract to be of the essence of that contract, the specified time will, nevertheless, be considered material as a measure of permissible delay. See Williston on Contracts, Section 847, note 72. Especially should this be so while the contract is still wholly executory.

Even if the stipulated period of 30 days be not considered in equity to be strictly of the essence of this contract, or even if the defendant be deemed to have waived the strict performance as to time, he cannot be held to performance after the lapse of a reasonable time. Page on Contracts (2d Ed.), Section 3055. He had promptly notified plaintiffs that the pending suit for damages constituted a defect in the title. He was strongly urging a prompt clearing of this defect in the title. The 34-day extension of time offered by him was amply reason-

able. He cannot in reason or equity be held obligated, by the contract or by his conduct, to accept performance so late as 64 days after the expiration of the 30-day period stipulated in the original contract. To enforce specific performance against him would be inequitable.

Defendant by cross petition prays for judgment against the plaintiffs for the $500 paid by him as earnest money, and for the money paid by him to his lawyer for examining the title, as well as for the money paid by him to his bank for examining the title and appraising the property preparatory to a mortgage loan that the bank was to extend to him, with the property as security, if a marketable title to the property was conveyed to him by the plaintiffs.

Defendant alleges, and has proven, that it is a well-known custom in Cincinnati for purchasers to have titles examined by attorneys, and that the fee charged by his attorney was the customary one. He claims that such custom was known to the plaintiffs at the time when they signed this contract.

But defendant stipulated the terms of this contract when he made his offer. Not relying upon any general rule of law as to the measure of his damages, he stipulated that if the title were found ''defective,'' and could not be ''remedied,'' he should receive back his $500. He made no mention of any other damages. *Expressio unius est exclusio alterius.* The word ''defective,'' as used in this contract, doubtless means ''not clear, free and unincumbered,'' and counsel for both parties seem thus to interpret its meaning. It is not contended that Condorodis and Condorodis could have disposed of the

suit for malicious prosecution more expeditiously than they did. Defendant is entitled to be paid the $500, but not the further sum claimed by him.

Specific performance will be denied to the plaintiffs, and judgment will be rendered here against them in favor of the defendant for $500 and interest thereon from March 11, 1927.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.