444 P.2d 132

**C. L. WILLIAMS and Jennie L. Williams,
husband and wife, Plaintiffs-Respondents,**

v.

**W. W. HAVENS and Alice H. Havens, hus-
band and wife, Defendants-Appellants.**

No. 9919.

Supreme Court of Idaho.

Aug. 1, 1968.

**440**

Kerr & Williams, Blackfoot, for appellants.

Furchner, Anderson & Beebe, Blackfoot, for respondents.

SMITH, Chief Justice.

Appellants (defendants), W. W. Havens and wife, the purchasers, hereinafter referred to as Havens, appeal from a judgment and decree of cancellation and forfeiture entered against them, involving a land sale and purchase contract made between themselves and respondents (plaintiffs), C. L. Williams, as husband, and wife, the sellers, hereinafter referred to as Williams.

January 22, 1952, Williams, as sellers, and Havens, as purchasers, entered into a written contract for the sale and purchase of approximately 370 acres of undeveloped land in Bingham County, Idaho. The parties agreed to a purchase price of $27,000.-00, to be apportioned to the land at $60.00 per acre, and the balance to two 16-inch wells to be drilled by respondents. Appellants made a down payment of $4,000.00. The balance of the purchase price was agreed to be paid in eight equal annual installments of $2,875.00 in principal sum, the first installment to become due one year from the date of the contract, and a like installment to become due January 22nd of each year thereafter, together with annual interest on the unpaid balances of purchase price at the rate of 6% per annum, from January 1, 1952, until the purchase price was fully paid.

The parties refer to 200 acres of the contracted land as the West Farm, and to 170 acres thereof as the East Farm, and the same are so referred to herein.

The land had no appurtenant water rights at the time of sale. The parties in-

tended that the land would be put under sprinkler irrigation by means of the wells which the seller, Williams, agreed to furnish. To such end Williams drilled two sixteen-inch diameter wells, one of about 250 feet in depth on the East Farm and another of similar depth on the West Farm.

The contract recites that the purchaser, Havens, would have to borrow funds to acquire and install the necessary pumping and sprinkler systems [1] in order beneficially to apply the water made available by the drilled wells; that both parties would execute a mortgage encumbering the property to secure such borrowed money; that the equipment so installed would be "kept there for providing an irrigation system for the irrigation" of the lands; that Havens would pay for the irrigation system, and that should Havens default in the mortgage payments, Williams would take over the equipment, make the mortgage payments, and terminate the contract.

The parties executed a $12,000.00 real property mortgage encumbering the East Farm, as a chattel mortgage as additional security encumbering the irrigation equipment. The irrigation system was in good condition at the time of trial (January 7, 1965), needing only minor repairs.

The contract also contains forfeiture provisions, in pertinent part as follows:

"In the event of a failure to comply with the terms hereof or to make the payments when due as herein specified by the second parties [appellants] and after demand in writing that the terms hereof be complied with or payments which are in default made within thirty days from the date of said demand on the second parties, and continued default, the said first parties [respondents] shall be released from all obligations in law or equity to convey said property and every part thereof and eject the said second parties therefrom; and the said parties of the first part shall in such event be released from all obligations either in law or in equity to convey the said property as herein provided, and any amount or amounts which shall have been paid hereon by the second parties shall and may be retained by the first parties and accepted by them as rental for said property during such occupancy by the second parties and as liquidated damages for the breach of this contract; and the said second parties shall forfeit all right thereto and all payments made on said property."

August 1, 1958, Williams conveyed the 200 acre West Farm to Havens which conveyance left the 170 acre East Farm still covered by the contract. The East Farm is the sole property involved in this action.

Following this conveyance Havens made a payment on August 4, 1958. The Havens paid nothing thereafter. The entire

---

1. "The parties hereto contemplate that it will be necessary for the parties of the second part (appellants) to borrow funds for the installation of the pumping system, motor, sprinkling system equipment, pipe lines and conduits, and it is agreed that the said first parties and the said second parties shall make, execute and deliver to the lending corporation a valid first mortgage on said premises to secure the payment of the sum necessary for said purposes and to be borrowed from the said lending company, and it is provided that the proceeds from said loan may be used by the second parties to purchase said equipment and not otherwise and that the said equipment shall be installed upon said premises and kept there for providing an irrigation system for the irrigation of said lands, and all of said indebtedness, principal and interest, shall be paid by the said second parties on said mortgage when and as due and in the event of the failure of said second parties to make said payments and should they permit the said mortgage to become in default and the mortgagee demands payment which second parties are unable to make, the said first parties may take over said equipment on said premises and make payment to the mortgagee therefor in any manner satisfactory to the mortgagee, and in such event this contract shall terminate and be of no further force or effect. Second parties to furnish any additional amount required."

balance of principal and interest was due January 22, 1960.

Williams wrote Havens on June 13, 1961, enclosing a computation of the balance due under the contract. A dispute ensued over the computation, Havens claiming that Williams had charged compound interest, in the form of interest upon interest. Havens also asserted a claim for a set-off stemming from alleged damage incurred upon their land from a trespass by Williams' sheep.

Thereafter, on June 27, 1962, Williams commenced this action for possession of the real property, improvements, and irrigation equipment, and for cancellation and forfeiture of the contract as to the easterly 170 acres (the East Farm). They alleged that there was due, owing and unpaid under the contract $11,245.00 principal, together with interest at six percent per annum from August 4, 1958, the date of the last payment; alleged defaults in the payment of taxes for 1959, 1960, and the first half of 1961; alleged the giving of notices, and Havens' continued defaults after notice.

Havens filed an answer and counterclaim alleging that they had an equitable interest in the property; that they were entitled to a credit of $926.50 on the installments due in January, 1963, for feed and forage eaten by Williams' trespassing sheep; also, that they were entitled to a credit of $2,700.00 for a claimed refund received by Williams from the seller of the sprinkler irrigation equipment.

After trial, in January 1965, the trial court on May 4, 1966, rendered its findings wherein it found that Williams had complied with the terms and conditions of the contract, and that Havens had not; that the sprinkler irrigation system on the East Farm was appurtenant to the land; that Havens were delinquent in payment of certain taxes and assessments, in payment of certain installments and interest under the terms of the real property and chattel mortgages, in payment of interest since August 4, 1958, under the contract, and in

payment of $11,511.58 principal sum owing as of August 4, 1958. All such sums which Havens owed (with interest computed to date of judgment) totaled $21,153.93.

On the basis of principal and interest received by Williams and apportionable to the East Farm, together with the value of the East Farm, less mortgage principal of $4,800.00 still owing, the court also found the value which would accrue to Williams, upon a return to them of the East Farm, would be $26,408.56; also, found that the rental value of the East Farm as unimproved land, for the thirteen year period during which Havens occupied the land (to time of trial in January 1965), was $21,663.38, which included $751.38 as the balance owing on purchase price of the West Farm, and $2,712.00 mortgage payments made by Williams, defaulted by Havens.

Finally, the court found that "the cancellation of the contract and restoration of the premises to the plaintiffs [Williams] as prayed for in the complaint do not result in any penalty to the defendants [Havens] or in any unjust enrichment to the plaintiffs."

The court then concluded that Williams were entitled to have the sale and purchase agreement cancelled and terminated; that they were entitled to retain all payments made by Havens; and were entitled to restoration of the lands (the East Farm) and the improvements thereon (the sprinkler irrigation equipment), subject to the unpaid balance of principal and interest of the real property and chattel mortgages encumbering the land and equipment, and subject to taxes and assessments. The trial court entered judgment accordingly, and decreed that title to the East Farm be quieted in Williams.

Havens claim the trial court erred in granting equitable relief to Williams, contending that Williams failed to perform the contract, by failing to tender a good and sufficient deed and title insurance policy.

Havens made their last payment August 4, 1958; Williams, after having

given notice of default, commenced this action June 27, 1962. It is clear from the record that there was still due and owing to Williams, as late as 1962, a substantial portion of the purchase price. The contract provided in effect that Williams were under no obligation to convey the property until the purchase money had been paid in full, together with all of the taxes. See Wolter v. Dixon, 29 Idaho 26, 39, 157 P. 250 (1916). Moreover, when a contract is still executory, a party who is not in default, and who is ready, able and willing to perform may, by serving notice on the other party requiring him to perform within a reasonable time, make such performance a condition of his own further necessary performance. Condorodis v. Kling, 33 Ohio App. 452, 169 N.E. 836 (1928); 17A C.J. S., Contracts § 480, p. 679; 6 Williston on Contracts, 3rd, sec. 852. A tender is not required where the other party has placed it beyond his power to perform, or has shown or indicated that he will not or cannot perform. Siegel v. Shaw, 337 Mass. 170, 148 N.E.2d 393 (1958); Vander Realty Co., Inc., v. Gabriel, 334 Mass. 267, 134 N.E.2d 901 (1956); Adams v. Cox, 52 N. M. 56, 191 P.2d 352 (1948). It is implicit from the evidence that Williams were at all times ready, willing, and able to perform, conditioned upon Havens fulfilling their payment obligations; hence, Havens cannot successfully contend that Williams failed to perform their contractual agreement by failing to tender a good and sufficient deed and title insurance policy.

██ Similarly, we find no merit in Havens' contentions that the trial court erred in cancelling and terminating the contract solely because Williams' initial written demands and notices of forfeiture in 1962 allegedly demanded an excessive sum. In view of Havens' four-year delay in paying the installments due, it was incumbent upon Havens to respond affirmatively to Williams' notices of default and demands, either by denying the same or by complying with the demands. Although Havens objected to Williams' original computation of the balance due, they failed to respond to Williams' subsequent demands based upon a recomputed balance, and for payment of taxes owing. The contract specifically provides that in the event of failure to comply with its terms or to make payments when due as therein specified and after demand in writing that the terms be complied with, Williams shall be released from all obligations in law or equity to convey the property. Whether Williams' initial financial computations were, in fact, excessive, is immaterial in the light of the specificity of the contract in defining Havens' responsibilities for payment. Havens' responsibilities were not thereby diminished by the manner or method of Williams' notice.

Havens contend that the trial court erred in not finding Williams guilty of usury for their alleged attempt to charge compound interest or interest upon interest. See I.C. § 28–22–107. According to Havens, on January 22nd of each year Williams added the accrued interest to the principal and then computed interest for the next year upon the resulting new principal

██ In their original pleadings, and as part of their answer and counterclaim to Williams' complaint, Havens stated, in their Fifth Defense:

"That the Plaintiffs [Williams] have persisted throughout the life of the contract in demanding excessive interest installments and that all demands referred to in paragraph X were for amounts substantially in excess of any obligation of the Defendants [Havens] to the Plaintiffs and did not constitute a demand and notice in writing contemplated by the agreement of the parties referred to paragraph X of the Complaint."

Such defense is the only instance in which Havens' pleadings alleged excessive monetary charges. We do not deem such pleading sufficient to raise the issue of usury. The allegation that Williams demanded "excessive interest," standing alone, does not allege usury. See Musser v. Murphy, 49 Idaho 141, 145–146, 286 P. 618 (1930);

Easton v. Butterfield Live Stock Co., 48 Idaho 153, 279 P. 716 (1929); nor shall we consider on appeal issues not originally raised in the trial court. See Christensen v. Stuchlik, 91 Idaho 504, 427 P.2d 278 (1967); Cantlin v. Carter, 88 Idaho 179, 397 P.2d 761 (1964); Miller v. Miller, 88 Idaho 57, 396 P.2d 476 (1964); Robinson v. Spicer, 86 Idaho 138, 383 P.2d 844 (1963). See also Musser v. Murphy, supra; and Reynolds v. Continental Mortgage Co., 85 Idaho 172, 377 P.2d 134 (1962).

■ Havens assign error committed by the trial court in admitting the testimony of the witnesses, Thomas and Hansen, concerning their purchases in 1963 and 1964 of real property in the neighboring area of the East Farm. The trial in this cause was in January 1965. The testimony was elicited for the purpose of determining the reasonable market value of the East Farm. There was no testimony to indicate that conditions as regards the lands in the area were different at the time of the transactions to which the witnesses referred, as compared to the time that they testified. Generally the price realized on a land sale made under ordinary circumstances is evidence of the value of the land at the time of the sale and at a time reasonably near the sale, if conditions have remained substantially the same. Fleischer v. Cosgrove, 145 Cal.App.2d 14, 301 P.2d 911 (1956); Chase v. Watson, 294 P.2d 801 (Okla. 1956); Donaldson v. Greenwood, 40 Wash.2d 238, 242 P.2d 1038 (1952); Fidelity Security Corporation v. Brugman, 137 Ore. 38, 1 P.2d 131, 75 A.L.R. 1333 (1931); State By and Through Road Commission v. Jacobs, 16 Utah 2d 167, 397 P.2d 463 (1964); see also Higgins v. Belson, 66 Idaho 736, 168 P.2d 813 (1946).

The testimony of the expert witness, Roy Neider, was that the East Farm had a reasonable market value of $25,250.00. Mr. Neider for 10 years had served as a bank appraiser in determining market values of farm properties, not only for the purposes of his employer bank, but for oth-er banks and for members of the general public. He further stated that at least 50% of his appraisals are intended to arrive at market values for purposes of buying and selling real properties. He also engages in farming and owns farm property in the area of the East Farm. He appraised the East Farm, with which he was familiar, shortly prior to the time of trial of this cause. He testified that he considered various factors, including the entire sprinkler irrigation system by which the farm was irrigated, and the fact that the farm was relatively unimproved in that it did not have a residence, potato cellars, and other types of improvements.

■ The trial court obviously based its finding that the reasonable market value of the East Farm was $25,250.00 at the time in question on the expert testimony of Mr. Neider. His testimony constitutes substantial evidence supporting such finding. Any error, if such there was, pertaining to the admission of evidence adduced, of contemporary sales through witnesses Thomas and Hansen, as asserted by Havens, was harmless. See Basye v. Hayes, 58 Idaho 569, 76 P.2d 435 (1938); American Eagle Fire Ins. Co. v. Van Denburgh, 76 Ariz. 1, 257 P.2d 856 (1953).

■ Havens contend that the trial court erred in determining the reasonable rental value of the East Farm at $22,100.00 for the 13 years they were in possession, because such valuation was based on the East Farm as a sprinkler-irrigated farm. Havens argue that by valuing the East Farm as a sprinkler-irrigated farm, the court was charging them with the rental value of their own labor and improvements; they argue that the proper standard should have been to assess the East Farm as raw, unimproved land, and not as an irrigated farm.

■ The trial court found that the reasonable rental value of the East Farm, as a sprinkler-irrigated farm, is $30.00 per acre, or $5,100.00 per year, provided the landlord was paying the electrical energy to pump the water and paying the real property

taxes. It also found that the average cost of pumping water is $7.00 per acre, and that a net estimated rental value after deducting such per acre power cost would be $23.00 per acre, or $3,190.00 net annual rental value. The court then found that "the net annual rent value is contributed to by the land, as improved by the addition of the well (which Williams furnished at their cost), to at least the extent of $10.00 per acre per year, and for the period of at least 13 years to the date of trial." Such rental attributable to the land, as so improved, would be the amount of $22,100.00, less $300.00 estimated annual taxes over the period of 13 years, resulting in an offset of $3,900.00. Substantial evidence supports the trial court's finding that the net annual rental value contributed by the land alone, as improved by the well, would be at least $10.00 per acre per year. Such finding does not consider the value of the land as improved by the sprinkler equipment and Havens' labor, but it does include the value of the land as affected by the well, drilled by Williams. Where there is substantial, competent evidence upon which the trial court can base its finding, such finding will not be disturbed on appeal. Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961); Johnson v. Strong Arm Reservoir Irrigation District, 82 Idaho 478, 356 P.2d 67 (1960).

■ Havens assign as error the trial court's failure to allow them a credit of $926.50 for feed and forage eaten by Williams' sheep in the course of a trespass committed upon Havens' land. Havens' affirmative defense pleaded that such amount should have been credited on the contract installment due in January, 1953.

The trial court found that Havens failed to prove damages for the alleged trespass of Williams' sheep. See Casey v. Nampa and Meridian Irrigation District, 85 Idaho 299, 304, 379 P.2d 409 (1963). In order for Havens to recover damages resulting from the alleged trespass of the sheep, it was incumbent upon them affirmatively to prove such damages in the trial court. In the absence of such proof, the trial court's finding is not error.

Havens contend that the chattels, including the sprinkler irrigation equipment, pumps, and motors, did not become part of the real estate unless or until the title to the equipment was held as security by the Williams, sellers. Both parties have presented at some length the general legal principles governing the determination of such property as either personalty or realty, whether appurtenant or not to the land to which it is attached. See Boise-Payette Lumber Co. v. McCornick, 32 Idaho 462, 186 P. 252 (1919); Montana Electric Co. v. Northern Valley Mining Co., 51 Mont. 266, 153 P. 1017, 1018 (1915); Johnson v. Pacific Land Co., 84 Ore. 356, 164 P. 564 (1917); Pioneer Sand & Gravel Co. v. Hedlund, 178 Wash. 273, 34 P.2d 878 (1934); 35 Am.Jur.2d, Fixtures, sec. 56, p. 744.

■ The applicable portion of the purchase contract, set out at Footnote 1, supra, specifically governs the rights of the parties as regards the sprinkler irrigation equipment, the same to be kept in and upon the land in order to provide an irrigation system for the irrigation of the land; also providing that the system be financed by borrowed money, with repayment secured by both a chattel mortgage encumbering the equipment and a real property mortgage encumbering the land, the mortgages to be, and which were, executed by both parties. Williams, to avert foreclosure of the mortgages, were forced to make several payments of principal and interest to the mortgagee. Pursuant to the obligations of the contract, Havens' failure to make the mortgage payments, and their allowing the mortgage encumbering "the premises" to become in default, entitled Williams to take over the equipment constituting the sprinkler irrigation system.

Havens contend that the declaration of forfeiture by the trial court, and cancellation of the contract, imposed a penalty upon them and led to an unconscionable result.

[13] We recognize the general principle that where enforcement of a forfeiture provision in a contract would result in an unconscionable and exorbitant recovery, bearing no reasonable relationship to actual damage suffered, the forfeiture provision is unenforceable, Miller v. Remior, 86 Idaho 121, 383 P.2d 596 (1963); Williamson v. Smith, 74 Idaho 79, 256 P.2d 784 (1953); Sullivan v. Burcaw, 35 Idaho 755, 208 P. 841 (1922); Western Macaroni Mfg. Co. v. Fiore, 47 Utah 108, 151 P. 984 (1915); Malmberg v. Baugh, 62 Utah 331, 218 P. 975 (1923); Donoghue v. Tonopah Oriental Mining Co., 45 Nev. 110, 198 P. 553, 15 A.L.R. 937 (1921). On the other hand, a court sitting in equity will not interfere with a forfeiture, if the amount forfeited bears a reasonable relationship to the vendor's loss. See Coe v. Bennett, 46 Idaho 62, 266 P. 413 (1928); Miller v. Remior, supra.

The contract herein provides for forfeiture and cancellation in the event of Havens' continued default after notice given. Specifically, the parties covenanted that "* * * any amount or amounts which shall have been paid hereon by the second parties [Havens] shall and may be retained by the first parties [Williams] and accepted by them as rental for said property during such occupancy by the second parties and as liquidated damages for the breach of this contract; and the said second parties shall forfeit all right thereto and all payments made on said property."

In the light of all the facts and circumstances of this case, we are constrained to the view that retention by Williams of the amounts which Havens paid on the East Farm under the contract, as liquidated damages, is not disproportionate to Williams' actual damages sustained. Particularly the sum of $10,752.57, constituting Havens' payments apportionable to the East Farm, is much less than the net rental value of $18,200.00 for the East Farm for the applicable period (which sum does not include Havens' additional items of indebtedness to Williams, as found by the court, of $751.38 balance owing by Havens on the purchase price of the East Farm, and $2,712.00 mortgage payments made by Williams). Therefore, the retention of such amount by Williams is in conformity with the agreement of the parties as regards the liquidated damages in the event of Havens' breach, and is not disproportionate or excessive in comparison with Williams' actual damages so as to constitute a penalty. Miller v. Remior, supra. See also Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954); Williamson v. Wilson, 56 Idaho 198, 52 P.2d 138 (1935); Coe v. Bennett, Supra; Hinsch v. Mothorn, 44 Idaho 539, 258 P. 540 (1927); 134 A.L.R. 1064; 102 A.L.R. 852; 59 A.L.R. 189.

Havens, by assignment of error, contend that Williams were not entitled to have their costs included in the judgment. I.C. § 12–113 states, in pertinent part:

"The party in whose favor the judgment is rendered and who claims his costs, must, within five days after the verdict or notice of the decision of the court or referee, file with the clerk, and serve upon the adverse party or his attorney, a copy of a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified by the oath of the party or his attorney or agent, or by the clerk of his attorney, stating that to the best of his knowledge and belief the items are correct and the disbursements have been necessarily incurred in the action or proceeding. * * * "

The judgment of the trial court, dated May 4, 1966, recites that "costs are hereby taxed in the sum of $39.-65, in favor of plaintiffs and judgment is hereby rendered therefor." The record indicates that Williams' memorandum of costs was served on Havens' attorney on or about May 6, 1966, but that the memorandum was not filed with the clerk of the court until May 16, 1966. A failure both to serve and file the itemized memorandum

of costs within the time prescribed by the statute is fatal, and costs cannot be allowed where the statute is not complied with. See Steensland v. Hess, 25 Idaho 181, 136 P. 1124 (1913); Schmelzel v. Board of Com'rs, 16 Idaho 32, 100 P. 106, 21 L.R.A.,N.S., 199 (1909); Stickney v. Berry, 7 Idaho 303, 62 P. 924 (1900); Riddell v. Harrell, 71 Cal. 254, 12 P. 67 (1886); Miller v. Shute, 55 Or. 603, 107 P. 467 (1910). We are thus constrained to reverse the judgment insofar as it allowed Havens' costs incurred in that court.

We have carefully examined Havens' remaining assignments of error and find them to be without merit. The judgment is affirmed, except that the costs therein allowed are ordered stricken.

Costs to respondents.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.